ROZ-LYNN BECKENSTEIN ET AL. *v.* REID AND RIEGE, P.C., ET AL.
(AC 28313)

Harper, Beach and Robinson, Js.

---

Argued October 24, 2008—officially released March 31, 2009

*Daniel J. Klau*, with whom, on the brief, were *Michael P. Berman* and *Suzanne LaPlante*, for the appellants (plaintiffs).

*Paul E. Pollock*, for the appellees (named defendant et al.).

*Opinion*

BEACH, J. This case involves a trust created by Robert Beckenstein and the sale of commercial real estate for an amount of approximately $100 million. In contemplation of his death, Robert Beckenstein executed a trust, which created a business advisory committee (committee) to facilitate the sale of his business interests following his death or permanent disability. Following his death, an action was brought by the plaintiffs, Roz-Lynn Beckenstein, individually, as executrix of the estate of her husband, Robert Beckenstein, and as successor cotrustee of the trust; Julie Beckenstein, Robert Beckenstein's daughter; and Kathleen Bornhorst, successor cotrustee of the trust. The fundamental claim was that the defendants[1] Andrew J. Howat, a member of the committee, and Reid & Riege, P.C. (Reid & Riege), of which Howat was a partner, breached various obligations under the trust in essentially failing

---

[1] The revised complaint named Reid & Riege, P.C., Andrew J. Howat, Arthur G. Beckenstein and Seymour L. Flaster as defendants. The claims against Arthur Beckenstein and Flaster were withdrawn prior to trial. Accordingly, we refer to Reid & Riege, P.C., and Howat as the defendants.

to maximize the value received for the properties. The plaintiffs appeal from the judgment of the trial court, rendered after a jury trial, in favor of the defendants. On appeal, the plaintiffs claim that the court (1) abused its discretion in denying, in part, a request to amend the revised complaint, (2) improperly instructed the jury with respect to count one of the operative complaint, which alleged gross negligence and wilful misconduct on the part of Howat, and (3) improperly directed a verdict against them on count two of the operative complaint. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of the plaintiffs' appeal. Robert Beckenstein, who controlled substantial real estate interests, was diagnosed with pancreatic cancer in early 1999. On March 11, 1999, he executed a trust. According to the terms of the trust, Robert Beckenstein was the trustee. The trust provided for a successor trustee in the event of his death or inability to serve as trustee. It further provided that successor trustees shall have all the powers of the original trustee. The commercial real estate at issue ultimately was transferred into the trust. The trust created, inter alia, the committee, which included as members Howat, Seymour L. Flaster, a longtime financial advisor and confidante of the Beckenstein family, and Arthur G. Beckenstein, Robert Beckenstein's brother. Robert Beckenstein specified in § 10 (c) (1) of his trust that "[m]y primary recommendation is for my [b]usiness [i]nterests to be sold or liquidated following my death or [p]ermanent [d]isability in a reasonable manner and within a reasonable period of time so as to maximize the value realized." The trust also provided generally that members of the committee shall not be liable for any loss or depreciation unless the loss

or depreciation results directly from gross negligence or wilful misconduct.[2]

Shortly after being diagnosed with cancer, Robert Beckenstein, in addition to executing the trust, devised a plan to liquidate his business interests over the course of two years. At that time, Robert Beckenstein advised Ron Gross, chief financial officer, and Dennis Smith, vice president of Beckenstein Enterprises, of this plan. In connection with this liquidation plan, Robert Beckenstein and Arthur Beckenstein entered into employment contracts with several key employees, including Smith, Gross, Aaron Shakun, head of property management, and Robert Piazza, head of construction. These contracts provided that Robert Beckenstein intended to liquidate his real estate holdings and to dissolve his business entities over the next two years and further provided that Smith, Gross, Shakun and Piazza would maintain in confidence this intention due to the probable negative impact exposure could have on the economic success of the liquidation. Robert Beckenstein perceived that knowledge of his illness and desire to liquidate his holdings might deflate the market value of his properties.

At various meetings, Robert Beckenstein, Gross and Flaster discussed the value of properties to be sold. Two groups of properties were to be sold: the Lichtenstein properties, which included four shopping centers, and the Keller properties, which included office buildings and industrial properties. Robert Beckenstein signed resolutions giving Smith authority to negotiate and to sign real estate contracts on his behalf. Smith entered into contracts on May 23, 2000, to sell the Lichtenstein properties for $40.2 million and on May 25, 2000, to sell

---

[2] A clause of § 10 (c) of the trust document provides that the members of the committee shall not be liable for actions taken or omitted in accordance with § 10 (c).

the Keller properties for $58 million. On May 26, 2000, the properties were transferred into the trust. Robert Beckenstein approved the sale prices for both properties. After Robert Beckenstein's death on June 6, 2000, the committee advised the successor trustee to close the sales, with at least one adjustment. Such advice apparently was binding on the trustee, and the sales were completed. Prior to his death or disability, Robert Beckenstein, with Smith as his agent, made the decisions regarding his interests. Subsequent to his death or disability, the committee was, in effect, to make the decisions.

This action was commenced in April, 2003. On December 10, 2003, Roz-Lynn Beckenstein and Julie Beckenstein filed a revised complaint. On June 21, 2006, Roz-Lynn Beckenstein and Julie Beckenstein filed a request for leave to file an amended revised complaint. The defendants filed a partial objection,[3] which the court sustained. In October, 2006, during trial, Roz-Lynn Beckenstein, Julie Beckenstein and Bornhorst filed a substitute amended revised complaint.[4] A focus of the operative complaint was the claim that Howat breached his fiduciary duties as a member of the committee by, in essence, failing to ensure that Robert Beckenstein's business interests were sold so as to maximize the value received and that Reid & Riege, as legal counsel to the

---

[3] The motion to amend sought to amend the revised complaint in several respects. It sought to remove five counts of the complaint, all of which were directed at the then defendant Arthur Beckenstein. There was no objection to this portion of the request. It also sought to add Bornhorst as a plaintiff, to which there was no objection. It sought to add allegations to count one that (1) the committee had a duty to monitor Robert Beckenstein's condition and (2) the trust, by assignment, was the owner and holder of all interest in the Beckenstein business entities. The defendants objected to the addition of these allegations, and the court sustained the objections. On appeal, the plaintiffs contest the denial of their motion to amend with respect to the duty to monitor but not with respect to the assignment.

[4] The substitute amended revised complaint did not contain any of the proposed amendments that the court previously had not allowed.

committee, committed legal malpractice by failing to provide legal counsel to the committee that met the standard of care. Following trial, the jury returned a verdict in favor of the defendants. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiffs first claim that the court abused its discretion in denying, in part, the request to amend the revised complaint. We disagree.

On December 10, 2003, Roz-Lynn Beckenstein and Julie Beckenstein filed a revised complaint. Count one of the revised complaint alleged that Howat,[5] by his gross negligence and wilful misconduct, violated his fiduciary duties, responsibilities and obligations as a member of the committee, and that his failure to perform such duties, responsibilities and obligations as a member of the committee caused loss and depreciation of Robert Beckenstein's business interests. It listed numerous ways in which Howat, as a member of the committee, acted with gross negligence or wilful misconduct. On June 21, 2006, Roz-Lynn Beckenstein and Julie Beckenstein filed a request for leave to file an amended revised complaint, which sought, in part, to amend count one to include an allegation of a duty to monitor Robert Beckenstein's condition. In this proposed amendment, it was alleged that the committee knew or should have known that it had a duty to monitor the physical or mental condition of Robert Beckenstein to determine his ability or disability under the trust and had a duty to obtain from his physician a written declaration that on or about May 11, 2000, Robert Beckenstein was unable to serve as trustee under the trust. Had Howat properly executed his duty to monitor, a

---

[5] As noted previously, count one originally named Howat, Arthur Beckenstein and Flaster as defendants. The claims against Beckenstein and Flaster were resolved prior to trial.

certificate of disability would have been obtained earlier, and the committee's full responsibility regarding the sale of the real estate would have commenced by May 11, 2000, before Smith signed the relevant contracts.

The defendants thereafter filed a partial objection in which they, inter alia, contested the duty to monitor amendment. The court sustained the defendants' objection. It stated: "The proposed amendments are not seasonable because they are not in accordance with the court's scheduling order, they would prejudice the defendants, and they would cause a delay in the trial. . . . The scheduling order requires that pleadings be closed by September 20, 2004. The proposed amended complaint was not filed until June 21, 2006. The defendants would be prejudiced by the proposed amendments, as the scheduled trial date of September 19, 2006, would not allow the defendants to file and have hear[d] any pleadings addressing the legal sufficiency of the proposed amendments. The defendants also are entitled to conduct discovery regarding the new factual claims. The scheduled trial date does not allow adequate time to conduct such discovery. Consequently, granting the amendment request would delay the trial."

Our standard of review of the plaintiffs' claim is well defined. "A trial court's ruling on a motion of a party to amend its complaint will be disturbed only on the showing of a clear abuse of discretion. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. [An appellate] court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [plaintiffs'] burden . . . to demonstrate that the trial court clearly abused its discretion. . . . A trial court may allow, in its discretion, an amendment to pleadings before, during, or after trial to conform to the proof. . . . Factors to be considered in passing on

a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial." (Internal quotation marks omitted.) *Billy & Leo, LLC* v. *Michaelidis*, 87 Conn. App. 710, 714, 867 A.2d 119 (2005).

The plaintiffs contend that the court gave undue importance to the scheduling order deadline of September 20, 2004, on which date pleadings were closed, in denying the request to amend the revised complaint. The plaintiffs argue that the fact that the request to amend was filed after the pleadings had been closed does not by itself mean that the request to amend the pleading was unseasonable.

In this case, the court, however, did not base its decision solely on the fact that the request to amend was filed after the pleadings had been closed. In addition to noting that the request to amend was filed almost two years after the pleadings had been closed, it noted that granting the proposed amendment would prejudice the defendants and would cause a delay in trial, given that trial was to begin September 19, 2006, approximately three months after the request to amend was filed. "The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Voog*, 233 Conn. 352, 364, 659 A.2d 172 (1995). Though not conclusive, provisions of a scheduling order may be considered by the court.

The plaintiffs next argue that the court abused its discretion when it concluded that granting leave to

amend the revised complaint would prejudice the defendants because they would not have sufficient time to challenge the legal sufficiency of the new allegations. The plaintiffs contend that the court's reasoning is unsound because the proposed amendment did not constitute a new cause of action, and, as such, no basis existed for challenging their legal sufficiency through a motion to strike. See *Doe* v. *Yale University*, 252 Conn. 641, 667, 748 A.2d 834 (2000) (motion to strike challenges legal sufficiency of pleading).

Here, although both the revised complaint and the proposed amended complaint alleged gross negligence or wilful misconduct on the part of the committee relating to the sale of Robert Beckenstein's business interests, the allegations at issue in the proposed amended complaint arguably concerned a somewhat different set of specific facts. Compare *Billy & Leo, LLC* v. *Michaelidis*, supra, 87 Conn. App. 714 ("where an entirely new and different factual situation is presented, a new and different cause of action is stated" [internal quotation marks omitted]). Count one of the revised complaint alleged that Howat acted with gross negligence or wilful misconduct in numerous ways, some of which concerned the committee's failure to discover several alleged improprieties committed by Smith during the sale of the business interests. None of the allegations of gross negligence or wilful misconduct, however, specifically related to a duty to monitor Robert Beckenstein's health condition or a failure to obtain a written declaration of such disability.[6] As such, challenges to the proposed duty to monitor amendment may not have been frivolous. The court did not abuse its discretion in holding that allowing the proposed amended complaint would prejudice the defendants on the ground that it would not allow them sufficient time to file and to have

---

[6] Nothing in the trust document explicitly establishes a duty to monitor.

heard any pleadings addressing the legal sufficiency of, or other issues regarding, the proposed amendments.[7]

[7] The plaintiffs argue that if the proposed amendments should be deemed to constitute an entirely new cause of action, then the defendants' argument in their partial objection that the "duty to monitor" claim was legally insufficient is improper because such a claim properly is considered by means of a motion to strike. The plaintiffs argue that this argument of the defendants cannot serve as a legitimate ground for denying the proposed amendment. We agree that requests to amend ought not be denied because of the claimed insufficiency of the proposed amended complaint. See *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 256, 905 A.2d 1165 (2006) ("The proper procedural vehicle to challenge the legal sufficiency of a proposed pleading is a motion to strike, rather than an objection to a motion to amend. See Practice Book § 10-39.").

There is no indication, however, that the court denied the request to amend because of the sufficiency of the proposed amendments. The court stated that "the defendants would be prejudiced by the proposed amendments as the scheduled trial date of September 19, 2006, would not allow the defendants to file and [to] have heard any pleadings addressing the legal sufficiency of the proposed amendments." The court reasonably could have concluded that granting the motion to amend would have delayed the trial and prejudiced the defendants not because the proposed amendment necessarily was insufficient but because time was needed to contest the issue.

The plaintiffs further note that on June 1, 2006, the court permitted the late disclosure of their expert witness, Robert Siegel. The plaintiffs focus on the court's statement in support of its ruling that the three and one-half months left before jury selection was to begin on September 19, 2006 "is a significant period of time as litigation goes." They contend that the court should have applied a similar analysis when ruling on the request to amend and properly should have concluded that there was sufficient time for the defendants to challenge the legal sufficiency of the new allegations in the proposed amendments.

In permitting the late disclosure of the plaintiffs' expert, the court expressed concern as to whether the remaining three and one-half months before the commencement of trial constituted sufficient time. The court noted that it would permit the late disclosure provided that Siegel would be made available for deposition in the following two weeks and stated that it might need to reconsider allowing him to testify if the defendants met insurmountable obstacles in deposing him or procuring their own expert.

In ruling on both motions, the court expressed concern about the relatively short length of time before trial was set to commence. Dealing with a party's late disclosure of an expert witness may, in the trial court's discretion, consume less time than dealing with an amended pleading that may include both legal wrangling and discovery procedures.

Additionally, the court's ruling regarding Siegel's disclosure was made on June 1, 2006. Although the request to amend was filed on June 21, 2006, the court ruled on it on July 31, 2006. On July 7, 2006, the court issued a trial preparation order that required the parties to submit a written list of

The plaintiffs next contend that the court abused its discretion when it concluded that granting them leave to amend their complaint would prejudice the defendants because it would not allow them sufficient time to conduct adequate discovery. The plaintiffs argue that the proposed amendment would not have entailed any significant discovery beyond what already had been completed or what the parties had agreed to complete within the months remaining before trial. The defendants argued in their memorandum of law in support of their partial objection to the request to amend that they would need to depose again the plaintiffs' malpractice liability expert concerning the proposed claim that the committee had a duty to declare Robert Beckenstein to be disabled and to take control of his business interests. The court reasonably could have concluded that additional discovery would have been necessary or useful to adjudicate the duty to monitor claim raised in the proposed amendment and that undue delay would have been caused thereby. See *AirKaman, Inc.* v. *Groppo*, 221 Conn. 751, 767, 607 A.2d 410 (1992) (trial court did not abuse discretion by denying request to amend complaint where pleadings had been closed, opposing party had submitted trial brief and claim would require additional discovery), superseded by statute on other grounds as stated in *Renaissance Management Co.* v. *Commissioner of Revenue Services*, 48 Conn. Sup. 221, 838 A.2d 260 (2002), aff'd, 267 Conn. 188, 836 A.2d 1180 (2003); *S.M.S. Textile Mills, Inc.* v. *Brown, Jacobson, Tillinghast, Lahan & King, P.C.*, 32 Conn. App. 786, 631 A.2d 340 (trial court did not abuse

witnesses and exhibits by August 31, 2006, and required them to submit proposed requests to charge and objections to exhibits by September 8, 2006. In the exercise of its discretion, the court was free to determine that the late disclosure of Siegel would not prejudice the defendants, but that permitting the plaintiffs to amend their complaint would not provide the defendants with enough time to address, among other things, the legal sufficiency of the proposed amendments.

discretion in sustaining defendant's objection to plaintiffs' motion to amend complaint where motion filed after discovery completed and after motions for summary judgment filed), cert. denied, 228 Conn. 903, 634 A.2d 296 (1993). The trial court is in a better position than we are to evaluate the claims regarding discovery, and we will not upset the trial court's decision absent an abuse of discretion.

In light of the foregoing, we conclude that the court reasonably could have concluded that granting the plaintiffs' request to file an amended complaint would have delayed the trial and prejudiced the defendants. See *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 257, 905 A.2d 1165 (2006). Accordingly, the court did not abuse its discretion in denying the request to amend the revised complaint.[8]

## II

The plaintiffs next claim that the court improperly instructed the jury with respect to count one of the operative complaint, which alleged gross negligence and wilful misconduct on the part of Howat. We disagree.

The standard of review concerning claims of error in jury instructions is well settled. "[J]ury instructions are to be read as a whole, and instructions claimed to be improper are read in the context of the entire charge. . . . A jury charge is to be considered from the standpoint of its effect on the jury in guiding it to a correct verdict. . . . The test to determine if a jury charge is proper is whether it fairly presents the case to the jury in such a way that injustice is not done to either party

---

[8] The court's ruling was not inconsistent with the language of *Cook* v. *Lawlor*, 139 Conn. 68, 90 A.2d 164 (1952), to the effect that proper amendments are to be allowed unless, in the court's discretion, a sound reason exists for disallowing them.

under the established rules of law. . . . Jury instructions need not be exhaustive, perfect or technically accurate, so long as they are correct in law, adapted to the issues and sufficient for the guidance of the jury." (Internal quotation marks omitted.) *Bovat* v. *Waterbury*, 258 Conn. 574, 589–90, 783 A.2d 1001 (2001). "Our standard of review on this claim is whether it is reasonably probable that the jury was misled." (Internal quotation marks omitted.) *Sevigny* v. *Dibble Hollow Condominium Assn., Inc.*, 76 Conn. App. 306, 311, 819 A.2d 844 (2003).

The first count of the operative complaint alleged that Howat, through his acts or failure to act as a member of the committee, violated or breached his obligations under the trust and that such action or inaction amounted to gross negligence or wilful misconduct that directly resulted in loss or depreciation of Robert Beckenstein's business interests. The court began its instructions to the jury on this count with the following: "The [committee] was established under the trust at issue in this case. The plaintiffs claim that as a member of the [committee] . . . Howat was fiduciary to the trust and was required to carry out his fiduciary obligations in good faith. The plaintiffs claim that as a member of the [committee] . . . Howat breached these fiduciary duties because the [committee] failed to obtain current appraisals of the property being sold under the Keller and Lichtenstein contracts, failed to verify the accuracy and reliability of the sale prices, the deductions taken under the sale contracts and proceeded to sell the properties under the Keller and Lichtenstein sale contracts at prices that were below the fair market value of the properties."

The court explained that "under the terms of the trust, the members of the committee, including . . . Howat cannot be held financially liable for any actions taken by them unless their conduct constituted *gross*

*negligence or wilful misconduct.* More specifically . . . [p]aragraph 10 (b) of the trust . . . states the following: '[t]he members of the [committee] shall not be liable for any loss or depreciation unless the loss or depreciation results directly from . . . *gross negligence or wilful misconduct.*' " (Emphasis added.) The court proceeded to define both gross negligence and wilful misconduct and then stated: "As I previously indicated . . . Howat cannot be held liable for his conduct as a member of the [committee] unless he committed acts in violation of his fiduciary duties that constitute *gross negligence or wilful misconduct* as I have just described or defined for you. In order for the plaintiffs to recover from . . . Howat for his conduct as a member of the [committee], the plaintiffs must show that his conduct was more than just careless or negligent. The plaintiffs must prove by a preponderance of the evidence that Howat violated his fiduciary duties as the plaintiffs have alleged and that these violations constituted *gross negligence or wilful misconduct* as I have just described these terms to you." (Emphasis added.)

The court then turned to § 10 (c) of the trust. It stated that the trust provided "that upon Robert Beckenstein's death or permanent disability, the [committee] shall be guided by a recommendation that his business interests be sold or liquidated in a reasonable manner and within a reasonable period of time so as to maximize the value realized." It referred the jury to a particular portion of § 10 (c) that provided that "the [t]rustee and [b]usiness [a]dvisory [c]ommittee shall not be liable for actions taken or omitted in accordance with subparagraph (c)." With respect to this particular provision of § 10 (c), the court instructed that "this broad language suggesting that the members of the [committee] cannot be held personally liable for *any* actions taken to liquidate the trust property should be disregarded by you because

that language is too broad and thus is unenforceable.[9] Even under this provision . . . Howat as a member of the [committee] may be held liable for actions that are *wilful or intentional.*" (Emphasis added.)

The plaintiffs direct our attention to one sentence of the court's instruction regarding the exculpatory clause of § 10 (c). They claim that the court improperly instructed the jury that Howat could be held liable under the exculpatory provisions for only wilful *or* intentional misconduct. The plaintiffs argue that this instruction given by the court was improper because the court improperly failed to instruct the jury that proof of Howat's gross negligence, and not just wilful or intentional conduct, was sufficient to overcome the exculpatory provision in § 10 (c) the trust. The plaintiffs contend that the court's failure to instruct the jury that § 10 (c) permitted liability on the basis of gross negligence left the jury with the impression that a finding of gross negligence by Howat would not suffice to establish liability and thereby raised the threshold of culpability that the plaintiffs were required to prove to prevail on count one.

In instructing the jury as to the effect of § 10 (c), the court stated that the exculpatory clause was unenforceable. Technically, the court did not state that Howat could be held liable *only* for wilful or intentional misconduct but stated that even under the exculpatory clause, Howat could be held liable for actions that are wilful or intentional. The reading urged by the plaintiffs, however, is reasonable, but nonetheless, even if, as they claim, this instruction was improper, we do not agree that this single comment misled the jury when we review the jury charge in its entirety. "Jury instructions . . . cannot be read in a vacuum." *DeMarkey* v. *Fratturo*, 80 Conn. App. 650, 659, 836 A.2d 1257 (2003). We

[9] We need not decide whether General Statutes § 45a-541i (b) is applicable to the present case or whether the exoneration clause is otherwise unenforceable.

will not "critically [dissect the charge] in a microscopic search for possible error." (Internal quotation marks omitted.) *Sullivan* v. *Norwalk*, 28 Conn. App. 449, 456, 612 A.2d 114 (1992). "In assessing a claim of instructional error . . . we examine each jury instruction in the context of the charge as a whole, rather than by the instruction's individual, component parts." *Rubel* v. *Wainwright*, 86 Conn. App. 728, 737, 862 A.2d 863, cert. denied, 273 Conn. 919, 871 A.2d 1028 (2005).

When read as a whole, the charge properly instructed the jury as to Howat's liability with respect to count one. The plaintiffs in count one alleged gross negligence and wilful misconduct on the part of Howat. Paragraph 10 (b) of the trust provided that members of the committee shall not be liable for any loss or depreciation unless the loss or depreciation results directly from gross negligence or wilful misconduct. As stated previously, the court began its instructions on this subject matter by detailing the ways in which Howat allegedly breached his fiduciary duties in liquidating the properties and explained that he could be held liable if his actions constituted gross negligence or wilful misconduct. The court repeatedly instructed the jury that Howat would be liable if his actions constituted gross negligence or wilful misconduct. The court also instructed the jury "not [to] single out any particular instruction or give it more or less emphasis than any other." Given these instructions, it was not reasonably probable that the jury was misled.[10] See, e.g., *DeMarkey* v. *Fratturo*,

---

[10] This is especially so in light of the court's repeated instructions that Howat would be liable for his conduct as a member of the committee if his actions in violation of his fiduciary duties constituted gross negligence or wilful misconduct. Whatever activity Howat performed with respect to § 10 (c) was performed in his capacity as a committee member, and the court charged that Howat could be found liable as a committee member for actions that constituted gross negligence or wilful misconduct.

Although it is far from persuasive in itself, the court gave no instructions specifically stating that Howat could not be liable for gross negligence in the performance of his duties under § 10 (c). A thrust of the portion of the court's instruction narrowly at issue was to stress to the jury that the

supra, 80 Conn. App. 659 (despite inaccurate statement in instruction, when instruction read as whole, jury not reasonably misled); *Sullivan* v. *Norwalk*, supra, 28 Conn. App. 457 (despite isolated inaccuracies, court's instructions adequately instructed jury on proximate cause).

### III

The plaintiffs next claim that the court improperly declined to submit count two to the jury because, as pleaded and in view of the evidence, it was duplicative of count one. We disagree.

The following additional facts and procedural history are relevant to the plaintiffs' claim. The first count of the operative complaint alleged that Howat, by his gross negligence and wilful misconduct, violated his fiduciary duties, responsibilities and obligations as a member of the committee, and that his failure to perform such duties, responsibilities and obligations as a member of the committee caused loss and depreciation of the Robert Beckenstein business interests. It listed numerous ways in which Howat, as a member of the committee, acted with gross negligence or wilful misconduct.

The second count incorporated the first count in its entirety. The second count contained additional language that the wrongful acts of Howat, as a member of the committee, constituted breaches and violations of the fiduciary duties, responsibilities and obligations owed by Howat as a member of the committee to the fiduciaries, beneficiaries and distributees of the trust.[11]

exoneration clause was unenforceable. As elsewhere instructed at length, the general standard included gross negligence.

[11] Count two incorporated all of count one and added three additional paragraphs. These paragraphs referred to Howat's breaches of fiduciary duties without referring to a mental element. The forty-six paragraphs that comprised count one and which were incorporated into count two referred to the "gross negligence and wilful misconduct" of Howat as a member of the committee, which allegedly caused the business interests of Robert Beckenstein to suffer loss and depreciation.

As a result, the business interests of Robert Beckenstein suffered loss and depreciation.

On November 2, 2006, the defendants moved for a directed verdict as to, inter alia, count two. At the conclusion of the later charging conference, the court stated that it granted the defendants' motion as to count two. The court reasoned that the plaintiffs failed to assert a cause of action in the second count that was separate and distinct from the first cause of action. The court determined that counts one and two therefore should not be charged separately to the jury.

Although the parties argue the plaintiffs' claim in terms of the court's directing a verdict, the court, in substance, did not direct a verdict but, rather, declined to submit count two to the jury. The substance of the plaintiffs' claim is that the court improperly construed the pleadings in determining that count two was duplicative of count one. "Construction of the effect of pleadings is a question of law and, as such, our review is plenary." (Internal quotation marks omitted.) *Young* v. *Vlahos*, 103 Conn. App. 470, 476, 929 A.2d 362 (2007), cert. denied, 285 Conn. 913, 943 A.2d 474 (2008).

On appeal, the plaintiffs argue that the second count was not duplicative of the first and that, therefore, the court improperly concluded that count two was duplicative of count one. The plaintiffs contend that despite the exculpatory clause in § 10 (c) of the trust, General Statutes § 45a-541i (b)[12] imposes a statutory duty of reasonable care on trust agents, such as Howat. The plaintiffs contend that, unlike the first count, the second count alleged a cause of action for a breach of this duty

---

[12] General Statutes § 45a-541i (b) provides: "In performing a delegated function, an agent owes a duty to the trustee and to the trust to exercise reasonable care to comply with the scope and terms of the delegation and to exercise the delegated function with reasonable care, skill and caution. An attempted exoneration of the agent from liability for failure to meet such a duty is contrary to public policy and void."

of reasonable care, in accordance with § 45a-541i (b). We disagree.

The second count did not allege a theory of recovery distinct from that alleged in the first count. The second count explicitly referred neither to § 45a-541i (b)[13] nor to any mental element other than gross negligence or wilful misconduct, which elements were incorporated by reference from the first count. See *Pettit* v. *Hampton & Beech, Inc.*, 101 Conn. App. 502, 511, 922 A.2d 300 (2007). Additionally, the second count did not allege a breach of a duty of reasonable care. With respect to count two, the plaintiffs made no reference in their request to charge or in the memorandum of law in support of their request to charge to a duty of reasonable care or to § 45a-541i.[14] The second count of the complaint simply incorporated the allegations in the first count—that Howat, by gross negligence or wilful misconduct, breached his duties under the trust. Both counts alleged the same violations of those duties. The additional language in count two did not add anything of significance. Accordingly, the court did not improperly remove count two from the consideration of the jury.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] The plaintiffs did not claim in their operative complaint a statutory cause of action on the basis of General Statutes § 45a-541i.

[14] At trial, the plaintiffs seemed to suggest a distinction between the counts in that count one concerned Howat's activity under the trust as a member of the committee and count two concerned conduct "outside the trust." This rationale was not presented on appeal. The position advanced on appeal, which was that a fiduciary duty is governed solely by the reasonable care provisions of General Statutes § 45a-541i and independently of the trust document, was not clearly presented at trial.