******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## DEUTSCHE BANK NATIONAL TRUST COMPANY, TRUSTEE *v.* HUBERT POTOTSCHNIG ET AL.
### (AC 41229)

DiPentima, C. J., and Lavine and Keller, Js.*

*Syllabus*

The plaintiff sought to foreclose a mortgage on certain real property owned by the defendant P, who filed an answer with special defenses and counterclaims. Thereafter, the plaintiff filed a motion to strike all of the defendant's special defenses and counterclaims. Several of the special defenses challenged the plaintiff's standing to commence the foreclosure action. Following an evidentiary hearing, the trial court determined that the plaintiff had standing and granted the plaintiff's motion to strike the special defenses that implicated the plaintiff's standing and denied the motion to strike as to the remaining special defenses and all of the counterclaims. The trial court thereafter rendered judgment in favor of the plaintiff, from which the defendant appealed to this court. *Held*:

1. The trial court properly determined that the plaintiff had standing to bring the foreclosure action; the court found credible evidence demonstrated that the note had been endorsed in blank prior to the commencement of the foreclosure action and had been in the plaintiff's possession until the time of trial; moreover, the defendant failed to rebut the presumption that the plaintiff, as holder of the note, was the rightful owner of the debt, as the court clearly credited testimony regarding when the note was endorsed and rejected assertions made by the defendant that the plaintiff was not in possession of the note during a certain time period.

2. Contrary to the defendant's claim, the trial court properly concluded that a decision of a New York court did not have preclusive effect under the doctrines of res judicata and collateral estoppel; the parties in the present case were not in privity with the parties in the New York case and the cases involved factually distinct claims and different loans.

3. The defendant's claim that the trial court erred in failing to consider whether the trust for which the plaintiff is trustee ever received the note and mortgage was unavailing; the court did in fact address this argument in its memorandum of decision on the foreclosure complaint and clearly rejected it, and the defendant failed to present evidence sufficient to rebut the presumption that the plaintiff was owner of the debt and entitled to enforce the terms of the note and mortgage and it was unclear whether the defendant could even challenge the nature of the transfer.

4. The trial court did not abuse its discretion in making certain evidentiary rulings denying certain of the defendant's motions and requests; it was not improper for the court to deny the defendant's motion for leave to add special defenses as that request was made more than three years after the commencement of the foreclosure action and only after the court had granted in part the plaintiff's motion to strike the defendant's special defenses; moreover, the court was within its discretion to deny the defendant's requests for deposition commissions in light of the fact that the defendant failed to show that certain of the proposed individuals had any knowledge of the note or that the denial hamstrung his ability to rebut the plaintiff's presumption of ownership of the note; furthermore, the court properly determined that cease and desist orders of a New York state agency directed at the original lender that the defendant sought to introduce into evidence were irrelevant to the issue of standing, and the defendant did not pursue their admissibility.

Argued January 21—officially released October 6, 2020

*Procedural History*

Action to foreclose a mortgage on certain real property of the named defendant, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the named defendant filed a counter-

claim; thereafter, the matter was tried to the court, *Roraback, J.*; judgment of strict foreclosure, from which the named defendant appealed to this court. *Affirmed.*

*Randolph E. White*, pro hac vice, with whom was *Patrick Zailckas*, for the appellant (named defendant).

*Brian D. Rich*, with whom, on the brief, was *Logan A. Carducci*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. The defendant Hubert Pototschnig[1] appeals from the judgment of foreclosure rendered by the trial court in favor of the plaintiff, Deutsche Bank National Trust Company, as Trustee, for HSI Asset Securitization Corporation 2005-NC2 Mortgage Pass-Through Certificates, Series 2005-NC2 (HSI). On appeal, the defendant claims that the court (1) improperly determined that the plaintiff had standing to bring the foreclosure action, (2) failed to follow the decision of an out of state court, (3) failed to consider whether the securitized trust, HSI, ever received the note and mortgage, and (4) abused its discretion in several of its evidentiary rulings. We affirm the judgment of the trial court.

At the center of this appeal is the issue of whether the plaintiff had standing to commence this action. The trial court twice addressed this issue. First, in ruling on the plaintiff's motion to strike the defendant's special defenses, the court concluded, following an evidentiary hearing, that the plaintiff had standing. Later, in its memorandum of decision on the foreclosure complaint, the court addressed the issue of standing after noting that the defendant in his posttrial brief "largely attempts to relitigate the question of whether the plaintiff has standing to bring this action. It is within this court's discretion to treat its 2015 hearing decision as the law of the case with regard to the issue of standing. . . . Even if this court were to reconsider the question, the evidence offered at trial was sufficient to establish the plaintiff's standing to enforce the note." (Citation omitted.) We agree with the court that the plaintiff had standing because the facts, as found by the trial court, establish that an employee of the original lender, New Century Mortgage Corporation (New Century), endorsed the note in blank sometime prior to the end of August, 2005, which preceded both New Century's 2007 bankruptcy and the transfer of New Century's assets to a liquating trust in 2008. There was evidence, which the trial court credited, that the plaintiff possessed the note endorsed in blank at the time the foreclosure action was commenced in 2012.

In its decision on the foreclosure complaint, the court found the following facts and reached the following conclusions. "The plaintiff . . . seeks to foreclose a mortgage on a Woodbury . . . property owned by the defendant . . . . In its amended complaint, filed January 28, 2013, the plaintiff alleges that it is the holder of the promissory note and owner of the mortgage which are the subject of this lawsuit. The loan documents are alleged to have been prepared by the original lender, New Century . . . and executed by the defendant in connection with a $750,000 loan he received on June 10, 2005. The undisputed evidence at trial was that no payment has been made on this loan since January

23, 2012.

"On September 24, 2014, the defendant filed his fourth amended answer, asserting ten special defenses and three counterclaims. On November 10, 2014, the plaintiff moved to strike all of the special defenses and counterclaims. Several of the special defenses challenged the plaintiff's standing, thereby implicating the court's subject matter jurisdiction. In the fourth special defense, the defendant alleged that the plaintiff is an improper party, and in the sixth and seventh special defenses, the defendant alleged that the assignments of the mortgage by [New Century] to the plaintiff, made after July 15, 2008, are invalid. The fourth, sixth and seventh special defenses were all grounded in the allegation that [New Century] filed for chapter 11 bankruptcy in 2007 and that all of its assets were transferred, by order of the Bankruptcy Court, to a liquidating trust on July 15, 2008. It was the defendant's position that, based on the bankruptcy and transfer of assets, [New Century] either ceased to exist as an entity competent to endorse the note in blank and assign the mortgage to the plaintiff, or lacked the authority to unilaterally transfer assets after the bankruptcy was filed. In contrast, it was the plaintiff's position that the note was endorsed in blank by [New Century] prior to its bankruptcy, the plaintiff was the holder of the note when the present action was initiated and the defendant's challenges to [New Century's] assignment to the plaintiff were insufficient to deprive the plaintiff of standing to pursue this foreclosure action.

"An evidentiary hearing was held on October 2, 2015, to determine whether the plaintiff had standing to bring the foreclosure action. At that hearing, it was established that the endorsement on the note, bearing the name Magda Villanueva, was placed there by a stamp, not by an original signature. In her deposition, which was introduced at the hearing . . . Villanueva testified that she sometimes used a stamp to endorse notes on behalf of her employer, [New Century], and at least one of the stamps she used was missing a part of the letter 'G' in her first name. . . . Villanueva was employed by New Century until August of 2005, and, when she left, she destroyed all the stamps she had used for endorsing notes. It was also established at this hearing that the note had been endorsed in blank by . . . Villanueva sometime prior to June 24, 2009.

"Based on the evidence produced at the hearing, this court concluded that the plaintiff was the valid holder of the note and entitled to enforce it based on its possession of the note, endorsed in blank by [New Century]. . . . The plaintiff's production of the note established a presumption in its favor that it is the owner of the underlying debt. . . . The production of the note established the plaintiff's prima facie case against the defendant, and it was for the defendant to prove facts limiting

or changing the plaintiff's rights. . . . The defendant did not, however, meet his burden of proving that the debt belonged to a person or entity other than the plaintiff, and as such, this court concluded that the plaintiff had standing to pursue this foreclosure action. . . .

"At trial, the defendant stipulated to the authenticity of his signature on the original note and mortgage, both of which the plaintiff entered into evidence. Also introduced as an exhibit was a loan modification agreement entered into by the parties to resolve a prior foreclosure action. Jeremy Summerford, an employee of JP Morgan Chase Bank, N.A. (Chase), the loan servicer, testified credibly that, based upon his examination of Chase's business records, the plaintiff was the holder of the note and mortgage at the time it initiated the present foreclosure. Summerford further testified that the defendant has been in default of his payment obligations under the note since February of 2012. This fact was later confirmed by the defendant's own testimony. The plaintiff also introduced into evidence, as an exhibit, the requisite notice of default, which was sent to the defendant in advance of this action being commenced. Based on the foregoing, this court finds that the plaintiff has established its prima facie case and, as such, will be entitled to judgment unless the defendant proves any of his special defenses. . . . [T]he defendant has not met its burden in proving that the plaintiff is not the owner of the debt." (Citations omitted; footnotes omitted.)

Following the filing of the present appeal, the defendant filed a motion for articulation. In its memorandum of decision on the defendant's motion for articulation the court clarified: "Evidence regarding the note was presented both at the hearing conducted by the court on October 2, 2015, in response to issues raised by the defendant challenging the standing of the plaintiff to bring this action and at trial. On the basis of that evidence, the court found that the plaintiff was the holder of the original note endorsed in blank at the time the foreclosure action now on appeal was commenced. The court further found that the defendant had not met its burden of rebutting the presumption that the plaintiff was the rightful owner of the underlying debt at the time it instituted this action. In addition, the court also expressly finds that the original note was endorsed in blank by . . . Villanueva while she was employed by [New Century]. She left [New Century] in August of 2005. The defendant contends that [New Century] filed for bankruptcy in 2007. On the basis of these findings, the court concludes that the subject note was endorsed in blank by [New Century] before it filed for bankruptcy. . . .

"This court expressly finds on the basis of the testimony and exhibits offered by Albert Smith [a home lending research officer for Chase] at the October 2,

2015 hearing and on the basis of the testimony and exhibits offered by . . . Summerford at trial that the plaintiff was in possession of the original note endorsed in blank no later than May of 2009 and that the original note has remained in the possession of the plaintiff from at least May of 2009 until the time of trial. While there was no evidence presented which would enable the court to determine the precise date upon which the plaintiff took physical possession of the note, there was credible evidence offered that it had been in possession of the original note since at least May of 2009. On the strength of that evidence, this court finds that the plaintiff was in possession of the original note endorsed in blank by . . . Villanueva for [New Century] from at least May of 2009 until the time of trial."

I

The defendant first claims that the court improperly determined that the plaintiff had standing to bring this foreclosure action. We disagree.

"It is well established that [a] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . Our review of the question of [a] plaintiff's standing is plenary. . . . Furthermore, [t]he scope of review of a trial court's factual decisions related to the issue of standing on appeal is limited to a determination of whether they are clearly erroneous in view of the evidence and pleadings." (Citation omitted; internal quotation marks omitted.) *CitiMortgage, Inc.* v. *Gaudiano*, 142 Conn. App. 440, 444, 68 A.3d 101, cert. denied, 310 Conn. 902, 75 A.3d 29 (2013).

"The plaintiff's possession of a note endorsed in blank is prima facie evidence that it is a holder and is entitled to enforce the note, thereby conferring standing to commence a foreclosure action. . . . After the plaintiff has presented this prima facie evidence, the burden is on the defendant to impeach the validity of [the] evidence that [the plaintiff] possessed the note at the time that it commenced the . . . action or to rebut the presumption that [the plaintiff] owns the underlying debt. . . . The defendant [must] . . . prove the facts which limit or change the plaintiff's rights." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Bliss*, 159 Conn. App. 483, 489, 124 A.3d 890, cert. denied, 320 Conn. 903, 127 A.3d 186 (2015), cert. denied, U.S. , 136 S. Ct. 2466, 195 L. Ed. 2d 801 (2016).

General Statutes § 49-17[2] "codifies the common-law principle of long standing that the mortgage follows the note"; (internal quotation marks omitted) *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 127, 74 A.3d 1225 (2013); and "allows the holder of a note to foreclose on real property even if the mortgage has not been assigned to him." Id. "[A] holder of a note is presumed to be the owner of the debt, and unless the presumption is rebutted, may foreclose the mortgage under § 49-17. The possession by the bearer of a note [e]ndorsed in blank imports prima facie that he acquired the note in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching its validity. The production of the note establishes his case prima facie against the makers and he may rest there. . . . It [is] for the defendant to set up and prove the facts which limit or change the plaintiff's rights." (Internal quotation marks omitted.) Id., 135.

A

The defendant argues that the court erred in determining that the plaintiff had standing to bring the present foreclosure action. He contends that the plaintiff has not established the rebuttable presumption that it is the holder of the note entitled to enforce the note because it failed to demonstrate "when it acquired the note, how it acquired the note [and] from whom." He contends that the only evidence the plaintiff produced to support standing was conflicting testimony from Smith and Summerford "as to the timing and significance of computer generated images of the note allegedly contained in . . . Chase's computer system. Such limited evidence, without more, is unreliable and provided an insufficient and clearly erroneous basis for the trial court to find that the plaintiff had established standing as a matter of law." We do not agree with the defendant's argument.

In his argument, the defendant highlights conflicts between Smith's deposition testimony and his testimony at the October 2, 2015 hearing regarding internal computer generated documents of the note by Chase. Although the defendant's argument fails on legal grounds that we will discuss later, it is worth noting that evidence is not insufficient because it is conflicting, rather it is the function of the trier of fact to weigh conflicting versions of events and determine which is more credible. *Masse* v. *Perez*, 139 Conn. App. 794, 798, 58 A.3d 273 (2012), cert. denied, 308 Conn. 905, 61 A.3d 1098 (2013). In the present case, however, the trial court explained in its decision on the motion to strike the discrepancy between Smith's deposition testimony and October 2, 2015 testimony as follows. "Smith is a home lending research officer for . . . Chase which services the mortgage loan to the defendant, which is the subject of this dispute. . . . Smith had examined the business records of . . . Chase in an effort to determine when

the stamped endorsements had been placed on the note. At his deposition held on December 8, 2014 . . . Smith had testified that the endorsement had been placed on the note on June 6, 2012. That conclusion was based on . . . Smith's misapprehension at the time he was deposed that the information contained in the defendant's exhibit 1 indicated that this document recorded the date of endorsement. At the hearing . . . Smith corrected his earlier testimony and explained that the information on exhibit 1 only evidenced that . . . Chase had, as part of an internal document review process, confirmed on June 6, 2012 that the note in its possession had been properly endorsed. In addition . . . Smith testified that further research of the business records of . . . Chase turned up evidence that the subject note had been endorsed sometime prior to June 24, 2009. This is because plaintiff's exhibit 1 revealed that, on that day, a copy of the note endorsed in blank by the stamped signature of . . . Villanueva had been furnished to the defendant in response to a discovery request he had promulgated in connection with a prior action, which had been commenced to foreclose the mortgage which the note secures." Accordingly, the discrepancy was explained by the court as relating a misapprehension by Smith, and the court explained that the June, 2012 date referred to the date on which Chase confirmed that the note had been endorsed, not the date of endorsement.

The defendant also contends that the testimony of Summerford at the foreclosure trial that he reviewed the computer generated images in Chase's computer system sometime in February or March, 2017, and saw a computer scan of the note allegedly entered into the system in May, 2009, did not constitute evidence of when and how the plaintiff acquired physical possession of the note.

In his argument, the defendant mischaracterizes Connecticut foreclosure law. The plaintiff is not required to prove the factual details of the delivery of the note, such as the precise date and manner in which it acquired the note. "Generally, in order to have standing to bring a foreclosure action the plaintiff must, *at the time the action is commenced,* be entitled to enforce the promissory note that is secured by the property." (Emphasis in original; internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Bliss*, supra, 159 Conn. App. 488. Accordingly, the defendant's argument regarding Chase's computer generated images of the note do not relate to whether the plaintiff has established the presumption of ownership of the debt. Case law is clear that "[a] holder only has to produce the note to establish [the] presumption [that it is the rightful owner of the underlying debt]. The production of the note establishes his case *prima facie* against the [defendant] and he may rest there. . . . It [is] for the defendant to set up and prove the facts [that] limit or change the plaintiff's

rights." (Emphasis in original; internal quotation marks omitted.) *JPMorgan Chase Bank National Assn.* v. *Simoulidis*, 161 Conn. App. 133, 144 126 A.3d 1098 (2015), cert. denied, 320 Conn. 913, 130 A.3d 266 (2016). By producing the note endorsed in blank, the plaintiff established the presumption that it is the rightful owner of the debt.

Furthermore, even though a plaintiff is not required to prove the precise date it came into possession of the note, in its articulation, the court stated that the credible evidence demonstrated that the plaintiff was in possession of the note endorsed in blank by Villanueva for New Century from at least May, 2009, until the time of trial. Accordingly, the plaintiff met its initial burden with respect to standing.

B

The defendant raises several arguments in support of his claim that the court improperly determined that he did not successfully rebut the presumption that the plaintiff is the owner of the debt. We disagree.

"The defending party may rebut the presumption that the holder is the rightful owner of the debt, but bears the burden to prove that the holder of the note is not the owner of the debt. . . . This may be done, for example, by demonstrating that ownership of the debt had passed to another party. . . . The defending party does not carry its burden by merely identifying some documentary lacuna in the chain of title that might give rise to the possibility that a party other than the foreclosing party owns the debt. . . . To rebut the presumption that the holder of a note endorsed specifically or to bearer is the rightful owner of the debt, the defending party must prove that another party is the owner of the note and debt. . . . Without such proof, the foreclosing party may rest its standing to foreclose the mortgage on its status as the holder of the note." (Citations omitted.) Id., 145–46, citing *U.S. Bank, National Assn.* v. *Schaeffer,* 160 Conn. App. 138, 146–47, 125 A.3d 262 (2015).

The defendant first contends that the presumption was rebutted by a July, 2008 order, which was admitted as an exhibit at the October 2, 2015 hearing, by the United States Bankruptcy Court for the District of Delaware confirming New Century's bankruptcy plan to transfer its asserts to a liquidating trust. He argues that New Century could not endorse the note in blank and assign it to the plaintiff because, as a result of New Century's bankruptcy filing, the liquidating trust was the entity that owned the note, mortgage, and underlying debt, not New Century, which ceased to exist as an entity. We disagree.

The transcript of Villanueva's deposition, which was admitted as an exhibit at the October 2, 2015 hearing, reveals that Villanueva testified that she had used her

actual signature 95 percent of the time and that she used her signature stamp for a period of time but could not recall approximately when that time period occurred. She further testified that she personally destroyed all of her signature stamps after her employment with New Century was terminated in August, 2005, and that, as far as she was aware, no additional signature stamps with her name then existed. She stated that during her time working for New Century she was not aware of any instances in which someone used her signature stamp without her knowledge.

The court credited Villanueva regarding the timing of the destruction of the stamps she used when she endorsed notes.[3] In its decision on the plaintiff's motion to strike, the court found that Villanueva, whose name was stamped on the endorsement in blank, testified that she was employed by New Century until August, 2005, that at least one of the stamps she used when endorsing notes is missing part of the letter "G" in her first name, and that she destroyed all of her stamps she used for endorsements when she left the employ of New Century in August, 2005.[4] The court concluded that these facts are consistent with the plaintiff being the owner of the debt, and we agree. According to these facts, the plaintiff demonstrated that the note, which bears Villanueva's stamped endorsement, was endorsed prior to August, 2005, which date precedes both the date that New Century filed for bankruptcy in 2007 and the 2008 transfer of assets to a liquidating trust. As a result, the defendant has not shown that the liquidating trust was the owner of the debt at the time the plaintiff commenced the present action.

The defendant additionally makes an attenuated argument that the plaintiff was not in possession of the note from September 6, 2008 to July 31, 2013, but, rather, Chase Home Finance, LLC, alleged in a September, 2008 complaint that it was the holder of the note, but all records in that file subsequently were destroyed. The defendant contends that the note was released to foreclosure counsel on July 31, 2013. The court clearly rejected these claims and the related testimony offered by the defendant, and concluded in its decision on the motion to strike, which conclusion it repeated in its decision on the foreclosure complaint, that the defendant had not met his burden of proving that the debt belonged to a person or entity other than the plaintiff. The defendant's argument does not demonstrate that the court's finding in this regard was clearly erroneous.

Because the plaintiff established the presumption that it is the owner of the debt and because the defendant has not rebutted that presumption, we conclude that the trial court properly determined that the plaintiff had standing to commence the foreclosure action.

II

The defendant next claims that the decision by the New York Supreme Court in *Deutsche Bank National Trust Co.* v. *Pototschnig*, Docket No. 109449/10 (N.Y. Sup. July 19, 2016), "should be accorded res judicata and collateral estoppel effect," and that the trial court erred in not so doing. In its memorandum of decision on the foreclosure complaint, the trial court determined that "[n]one of the conclusions reached by the New York court with regard to a foreclosure initiated by a different plaintiff seeking to foreclose on a different mortgage secured by a different note for a different amount executed on a different date and secured by different property have any relevance or dispositive relationship to the claims in the present case." We agree with the court and are not persuaded by the defendant's claim.

"The related doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter that it already has had a fair and full opportunity to litigate. . . . Despite being close cousins, those doctrines are not alternate expressions of the same. . . . [C]ollateral estoppel operates to bar the reassertion of an issue already fully litigated, [while] res judicata precludes one from raising causes of action, facts or issues that either already were adjudicated or could have been litigated fully in a prior action between the same parties or those in privity with them." (Citation omitted; internal quotation marks omitted.) *Sellers* v. *Work Force One, Inc.*, 92 Conn. App. 683, 685–86, 886 A.2d 850 (2005).

"[C]ollateral estoppel, or issue preclusion . . . prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties or those in privity with them upon a different claim. . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. . . . Furthermore, [t]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. . . . Both issue and claim preclusion express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . .

"If a party cannot succeed on a claim of collateral estoppel, though, it may be able to preclude claims on the basis of res judicata. [T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment

on a claim, if rendered on the merits, is an absolute bar to a subsequent action [between the same parties or those in privity with them] on the same claim. . . . In order for res judicata to apply, four elements must be met: (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Girolametti* v. *Michael Horton Associates, Inc.*, 173 Conn. App. 630, 649–50, 164 A.3d 731 (2017), aff'd, 332 Conn. 67, 208 A.3d 1223 (2019). "Additionally, the applicability of res judicata and collateral estoppel presents a question of law over which we employ plenary review." *Weiss* v. *Weiss*, 297 Conn. 446, 458, 998 A.2d 766 (2010); see also *Bruno* v. *Geller*, 136 Conn. App. 707, 726, 46 A.3d 974 (applying principles of res judicata on basis of decision of New York court), cert. denied, 306 Conn. 905, 52 A.3d 732 (2012).

Neither collateral estoppel nor res judicata applies in the present case. The parties in the present case and the New York case are not the same or in privity and the issues in both cases are different. In the New York case, the plaintiff was Deutsche Bank National Trust Company, as indenture trustee for New Century Home Equity Loan Trust 2005-3, which is a different entity than the plaintiff in the present case, which is Deutsche Bank National Trust Company as Trustee for HSI Asset Securitization Corporation 2005-NC2 Mortgage Pass-Through Certificates, Series 2005-NC2. The plaintiff in the present case and the plaintiff in the New York case are not in privity because the claims raised in both cases are factually distinct, involving different loans.[5] Moreover, the claims and issues raised in the New York case and the present case are different. In the New York case, the defendant asserted in his motion for summary judgment to dismiss the action that the plaintiff lacked standing for multiple reasons including that New Century went bankrupt in 2007 and therefore did not exist to assign the note and mortgage in 2010. The New York Supreme Court agreed with the plaintiff and concluded that "[t]he sole allegation in the complaint supporting [the] plaintiff's claim of standing is the alleged assignment to it from New Century approximately two weeks before the commencement of this action in July, 2010 . . . . However, as Pototschnig argued . . . New Century was powerless to make an assignment after its bankruptcy in 2007." The standing issues presented in the present case are wholly different from those in the New York case and can have no preclusive effect because the issues in the present case involve a different note and entirely different circumstances.

III

The defendant further claims that the court "erred in failing to consider whether the securitized trust ever received the note and mortgage." Specifically, he argues that, at the October 2, 2015 evidentiary hearing, he raised the issue and established through testimony that the plaintiff did not transfer the loan documents and the note to the securitized trust for which the plaintiff is acting as trustee, thereby raising an issue of subject matter jurisdiction that the court never addressed. The defendant's claim is unavailing because the court addressed this argument in its memorandum of decision on the foreclosure complaint.

The court heard the arguments and testimony presented by the defendant at the October 2, 2015 hearing and concluded in its April 21, 2016 decision on the motion to strike, that the plaintiff had standing to bring the foreclosure action, that it was the holder of the original note endorsed in blank at the time of the commencement of the foreclosure action and that the defendant had not proven that the debt belonged to another person or entity. In its decision on the foreclosure complaint, the court noted that, in his posttrial brief, the defendant attempted to relitigate the issue of standing and reiterated its conclusion that the plaintiff had standing to foreclose. In addressing the defendant's argument in his posttrial brief that the note and mortgage were never transferred to the securitized trust, the court concluded that "[t]he defendant's first argument, that the plaintiff did not prove the note was transferred to it in compliance with a pooling and service agreement, is meritless. Not only did the defendant not offer evidence sufficient to rebut the presumption, established by the plaintiff, that it is the owner of the debt and entitled to enforce the terms of the note and mortgage, but it is not even clear that the defendant has standing to challenge the nature of the transfer pursuant to the pooling and service agreement. . . . Accordingly, this court rejects the defendant's first argument." (Citation omitted.) The court clearly rejected the defendant's argument, and we agree with the trial court that his argument lacks merit and does not rebut the presumption that the plaintiff is the owner of the debt.

IV

In his last claim, the defendant challenges several rulings of the court. He argues that the court improperly denied his motion for leave to add special defenses, request to conduct further depositions, and request to introduce cease and desist orders into evidence at the October 2, 2015 evidentiary hearing. We are not persuaded by these claims.

First, we conclude that the court did not abuse its discretion in denying the defendant's motion for leave to add special defenses. "Whether to allow an amendment [to a pleading] is a matter left to the sound discre-

tion of the trial court. [An appellate] court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [amending party's] burden . . . to demonstrate that the trial court clearly abused its discretion." (Internal quotation marks omitted.) *Beckenstein* v. *Reid & Riege, P.C.*, 113 Conn. App. 428, 435, 967 A.2d 513 (2009). In denying the defendant's request to amend his special defenses, the court stated: "I'm denying these requests because it is more than three years since this action has begun. There's been every opportunity for these issues to have been raised and addressed. Judge Zemetis made a ruling earlier in the life of this case that he was going to permit ten special defenses to be interposed, that's my understanding. I'm going to stand by his ruling. Ten special defenses were interposed. The fact that several of those special defenses have been stricken or dismissed after a hearing held on their propriety isn't an invitation to introduce more special defenses because it will go on potentially indefinitely if we don't close the pleadings and have a trial on the substance of this matter." It was not improper for the court to deny the defendant's eleventh hour request to add more special defenses after the court granted the plaintiff's motion in part to strike the defendant's special defenses.

Second, we determine that it was not an abuse of discretion for the court to deny the defendant's motions for commission. The motions to take the deposition testimony of two out-of-state representatives of Chase, and the deposition testimony of a representative of HSI Asset Securitization Corporation were filed in September, 2016, more than three years after the commencement of the foreclosure action and months after the court's April, 2016 decision on the motion to strike in which it determined that the plaintiff had standing. The defendant argues in his brief that the denial of these motions "hamstrung [his] ability to provide evidence rebutting that presumption [that the plaintiff was the owner of the debt] by denying discovery as to when, how and under what circumstances, if any, [the] plaintiff . . . came into possession of the note and how, when, and under what circumstances a signature stamp bearing Villanueva's name was stamped as an endorsement on its back."

"[T]he granting or denial of a discovery request rests in the sound discretion of the [trial] court, and is subject to reversal only if such an order constitutes an abuse of that discretion. . . . [I]t is only in rare instances that the trial court's decision will be disturbed. . . . That ample discretion is limited, however, by the provisions of the rules [of practice] pertaining to discovery; Practice Book §§ 217 [through] 221 [now §§ 13-2 through 13-5]; especially the mandatory provision that discovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action."

(Citations omitted; emphasis omitted; internal quotation marks omitted.) *Brody* v. *Brody*, 153 Conn. App. 625, 637–38, 103 A.3d 981, cert. denied, 315 Conn. 910, 105 A.3d 901 (2014).

At a hearing on September 19, 2016, the court denied the defendant's requests for deposition commissions, including the ones specified in this appeal. With respect to two representatives of Chase, the court reasoned that "I don't find any evidence to . . . suggest that there's . . . anything faulty with this particular note. I'm gonna deny the motion for commission for these two employees of [Chase] unless you demonstrate to me that either of them has a specific recollection of this particular instrument." The court was within its discretion to deny the defendant's motions in light of the fact that the defendant failed to show that the Chase representatives could assist in proving that the note was faulty and/or endorsed after New Century ceased to exist as an entity, given that there was nothing demonstrating that they had any knowledge of this particular note. We further conclude, after a careful review of the record, that the court did not abuse its discretion in denying the defendant's motion for commission to depose HSI Asset Securitization Corporation. Moreover, the defendant cannot prevail on his claim that the court hamstrung his ability to rebut the presumption of ownership for the additional reason that at the conclusion of the September 19, 2016 hearing, the court permitted the defendant to further depose Villanueva regarding the note.

Third, the court did not abuse its discretion in declining to admit into evidence at the October 2, 2015 evidentiary hearing cease and desist orders of the New York State Department of Finance, which were directed at New Century. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . [E]videntiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *Stokes* v. *Norwich Taxi, LLC*, 289 Conn. 465, 489, 958 A.2d 1195 (2008). At the evidentiary hearing, the defendant's counsel sought to introduce the cease and desist orders issued while New Century existed, which the defendant believed were a triggering event in New Century's filing for bankruptcy, for the purposes of establishing that New Century existed, at least as to an enforcement agency, at the time the cease and desist orders were issued. The court ruled, "I don't think that they're relevant to the issues for this hearing. They might be relevant at a trial, but . . . the issues for this hearing—aren't centered on any alleged wrongdoing of New Century." The court did not abuse its discretion in determining that the case and desist orders were not relevant to the issue of standing before the court. At trial, the defendant offered the

cease and desist orders as exhibits for identification, but did not pursue their admissibility.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

1 The complaint also named as defendants: George Galetti; Douglas Faraldi; United States of America, Internal Revenue Service; and the State of Connecticut, Department of Revenue Services. The trial court stated that none of these defendants "participated in or filed any objections to the foreclosure." In this opinion, we refer to Hubert Pototschnig as the defendant.

2 General Statutes § 49-17 provides: "When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed, provided the person so foreclosing shall forthwith cause the decree of foreclosure to be recorded in the land records in the town in which the land lies."

3 The defendant attempts to challenge the court's findings regarding the credibility of Villanueva's testimony by referencing two out of state cases, *In re Hunter*, 466 B.R. 439 (Bankr. E.D. Tenn. 2012), and *In re Wilson*, 442 B.R. 10 (Bankr. D. Mass. 2010), which purport to demonstrate that Villanueva's stamp with a missing letter "G" was used for endorsements after she left New Century. In its decision on the foreclosure complaint, the court found that "[n]o evidence was adduced at trial which would lead the court to conclude that . . . Villanueva's stamped signature on the subject note in this case was the product of dishonest or unlawful conduct on her part or on the part of any other party." We decline the defendant's invitation to evaluate the credibility of Villanueva, let alone examine her testimony in the present case in light of findings in other cases regarding Villanueva's endorsements. There are a number of reasons why we cannot engage in such an assessment, but we will simply note the clear rule against appellate assessment of credibility. "We cannot second guess the trial court's assessment of the credibility of the witnesses . . . . It is the trial court [that] had an opportunity to observe the demeanor of the witnesses and parties; thus, it is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Internal quotation marks omitted.) *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 507, 646 A.2d 1289 (1994).

4 The stamped endorsement on the note contains an incomplete letter "G."

5 "While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel [or res judicata] is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding. . . . A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity." (Internal quotation marks omitted.) *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 813, 695 A.2d 1010 (1997).