STATE OF CONNECTICUT *v.* DAVID PAGANO
(7445)

DALY, NORCOTT and CRETELLA, Js.

Argued September 13—decision released October 30, 1990

*Thomas Ullman,* assistant public defender, for the appellant (defendant).

*Marjorie Allen Dauster,* deputy assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee (state).

NORCOTT, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of interfering with an officer in violation of General Statutes

§ 53a-167a, and assault in the second degree in viola-
tion of General Statutes § 53a-60 (a) (2). He challenges
the trial court's refusal to instruct the jury on
diminished capacity.

The jury could have reasonably found the following
facts. At approximately 1:42 p.m. on September 10,
1986, the defendant, David Pagano, was involved in
an automobile accident in East Haven. He told the
responding police officer, Thomas Fenton of the East
Haven police department, that he had tried to kill him-
self by driving into a telephone pole. Fenton adminis-
tered standard field sobriety tests and concluded that
the defendant was not under the influence of alcohol
or drugs. He then sent the defendant to Yale-New
Haven Hospital because of the defendant's stated intent
to commit suicide.

At the hospital, the defendant was placed in the cri-
sis intervention unit (CIU), a small locked unit primarily
for psychiatric and substance abuse patients. Approx-
imately one hour after his arrival, the defendant asked
mental health worker Leroy Wright for cigarettes.
When his request was denied, the defendant became
belligerent and, with another patient, started rifling
the nurses' station for cigarettes. Wright then called
security for assistance.

New Haven police officers Guy Gennette and
Reginald Wiltshire were the first members of the secur-
ity force to respond to Wright's call. Gennette escorted
the defendant to his room while Wiltshire attempted
to do the same with the other patient involved. Some-
where near the door of the defendant's room, the
defendant punched Gennette and broke his nose. A
struggle ensued in the defendant's room. During the
course of the fight, the defendant struck Gennette on
the head with Gennette's two-way radio. Several other

security officers came to Gennette's aid, subdued the defendant, and placed him in restraints on a hospital bed.

The defendant was charged in two counts: (1) assault of a peace officer in violation of General Statutes § 53a-167c (a) (1); and (2) assault in the second degree in violation of General Statutes § 53a-60 (a) (2). On the first count, the defendant was found guilty of the lesser included offense of interfering with an officer in violation of General Statutes § 53a-167a. The defendant was found guilty as charged of assault in the second degree under the second count.

The defendant challenges the trial court's refusal to charge the jurors that, under the facts of this case, they could conclude that diminished capacity negated the defendant's criminal intent. The defendant requested such a charge and excepted to the trial court's refusal to grant his request. We disagree with the defendant.

Evidence with regard to a defendant's mental capacity is relevant "in any case where a specific intent is an essential element of the crime involved . . . ." *State* v. *Hines*, 187 Conn. 199, 204, 445 A.2d 314 (1982). "Such evidence is admitted not for the purpose of exempting a defendant from criminal responsibility, but as bearing upon the question of whether he possessed, at the time he committed the act, the necessary specific intent, the proof of which was required to obtain a conviction." Id. The crimes of assault of a peace officer, interfering with an officer, and assault in the second degree, as charged in this case, are "specific intent" crimes.[1] An instruction on diminished capacity would

---

[1] To be guilty of the crime of assault of a peace officer, a person must act "with intent to prevent a reasonably identifiable peace officer . . . from performing his duty." General Statutes § 53a-167c (a). The crime of interfering with an officer has been interpreted to require "the intention to interfere with the performance of an officer's duties as a necessary element of the offense." *State* v. *Flynn*, 14 Conn. App. 10, 18, 539 A.2d 1005,

be warranted, therefore, "if sufficient evidence was introduced to justify it." *State* v. *Folson,* 10 Conn. App. 643, 651, 525 A.2d 126 (1987).

The state had the burden of proving the element of intent beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Ramsundar,* 204 Conn. 4, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987). To warrant consideration of diminished capacity, however, the defendant must have presented evidence "which *might have raised* a reasonable doubt as to the existence of the specified mental state." (Emphasis added.) *State* v. *Carter,* 189 Conn. 611, 627–28, 458 A.2d 369 (1983). Even viewing the evidence, as we must, in the light most favorable to supporting the requested instruction; *State* v. *Fuller,* 199 Conn. 273, 275, 506 A.2d 556 (1986); we find that the defendant failed to present sufficient evidence to require an instruction on diminished capacity.

At trial, the defendant attempted to bring diminished capacity into issue through the testimony of Fenton, the introduction of papers signed by Fenton pursuant to General Statutes § 17-183a (a),[2] the testimony of Alexander Kolezar, a resident physician at Yale-New

cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988). A person must act with "intent to cause physical injury to another person" to be guilty of assault in the second degree as charged in this case. General Statutes § 53a-60 (a).

[2] General Statutes § 17-183a (a) provides: "Any police officer who has reasonable cause to believe that a person is mentally ill and dangerous to himself, herself or others or gravely disabled, and in need of immediate care and treatment, may take such person into custody and take or cause such person to be taken to a general hospital for emergency examination under this section. The officer shall execute a written request for emergency examination detailing the circumstances under which the person was taken into custody, and such request shall be left with the facility. The person shall be examined within forty-eight hours and shall not be held for more than seventy-two hours unless committed under section 17-183."

Haven Hospital's CIU, and the introduction of the defendant's medical records.

Fenton testified that, on the date in question, he reported to the scene of an automobile accident in East Haven. There the defendant told Fenton that he had tried to kill himself. Fenton signed a form, introduced into evidence by the defendant, that stated: "It is my belief that the above-mentioned person is mentally ill and dangerous to himself, herself, or others or gravely disabled and is in need of immediate care and treatment." After Fenton completed the necessary paperwork, the defendant was sent to the emergency room for a psychiatric evaluation.

Kolezar, who had witnessed the altercation, had examined the defendant afterwards, and had recorded his medical history, testified that the defendant had a history of psychopathic, antisocial and impulsive behavior as well as "some organic brain problems [that] might [make him] very liable to respond extensively to small amounts of intoxicants." Kolezar attributed the defendant's "suicidal thoughts" to what he believed to be the defendant's intoxicated state.

After Kolezar completed his testimony, the defendant offered into evidence the records from his admission to Yale-New Haven Hospital on the day of the incident in question. The records contained several shorthand references to the defendant's history of seizures, sociopathic behavior, depression, and cerebral palsy.[3]

[3] On page five of the defendant's medical records, notes dated September 11, 1986, state, "Pt c̄ hx chronic antisocial behavior with chronic suicidality . . . pt c̄ hx w/drawl DTs ? SZ." A checkmark on page six of the records indicates that the defendant had a history of inpatient psychiatric treatment. The defendant's medical history on that same page states, "RBB c̄ NSSTT ▲s; + RF, + SZ, + 'cerebral palsy.' " Further down on the page, the defendant is described as hostile and violent, with mild depression and suicidal thoughts. Finally, a sentence on page seven of the records notes, "[The defendant] has a H/O heavy 'ETOH abuse, SZ disorder, sociopathic behavior' . . . 'cerebral palsy' & 'RF.' "

We conclude that this evidence was insufficient to raise a reasonable doubt as to the existence of intent. Nowhere in the testimony or exhibits did the defendant present any evidence of the effects of psychopathic, sociopathic, or antisocial behavior, organic brain disorder, seizures, depression, or cerebral palsy. In fact, these terms were not even defined for the jury. While a jury is entitled to infer impairment from intoxication "because it is an effect which is common knowledge and is an inference which is clearly within the ability of the jurors, as laypersons, to draw based on their own common knowledge and experience"; *State* v. *Heinz,* 3 Conn. App. 80, 86, 485 A.3d 1321 (1984); a jury should not be allowed to make a similar leap in reasoning when dealing with diminished capacity. Unlike the effects of intoxication, the effects of complex mental disorders are not commonly known to laypersons. Compare *State* v. *Kemp,* 199 Conn. 473, 507 A.2d 1387 (1986) (reliability of eyewitness identifications within knowledge of jurors); *Toomey* v. *Danaher,* 161 Conn. 204, 286 A.2d 293 (1971) (speed of vehicle as evidenced by damage caused in collision with stationary object within knowledge of jurors). The trial court's refusal to instruct the jury on diminished capacity is justified, therefore, by the defendant's failure to provide direct evidence of the effects of his various mental disorders on his capacity to form intent.

The judgment is affirmed.

In this opinion the other judges concurred.