******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ELLEN FARMER-LANCTOT *v.* MATTHEW SHAND
(AC 39817)

Prescott, Elgo and Blawie, Js.

*Syllabus*

The plaintiff sought to recover damages for personal injuries she sustained as a result of the alleged negligence of the defendant in his operation of a motor vehicle. At approximately 10:30 p.m., the defendant was driving his car toward the exit of a residential subdivision. At the same time, the plaintiff was walking with a group of individuals down the road. Specifically, the plaintiff was walking in the middle of the exit road when the defendant's car traveled around a curve at the bottom of a hill onto the exit, spotted the group walking in the road, and stopped prior to reaching the group. The plaintiff, upon seeing the defendant's headlights, jumped out of the road and into the grassy center island of the exit road, believing that the defendant was going to hit her. The plaintiff suffered a broken arm and subsequently commenced the present action, alleging, inter alia, that her injuries were proximately caused by the defendant's negligence. The defendant, in his answer, denied that he was negligent in the operation of his vehicle and as a special defense, alleged that the plaintiff's own negligence was the proximate cause of her injuries. The jury returned a general verdict in favor of the defendant, but no interrogatories were submitted to it, and the trial court rendered judgment in accordance with the verdict. On appeal to this court, the plaintiff claimed that the trial court improperly denied her request for a jury charge on the sudden emergency doctrine, the standard of care for a pedestrian in a roadway, and the defendant's duty to yield to pedestrians when making a right-hand turn. *Held* that the trial court properly declined to instruct the jury in accordance with the model instructions regarding crossing at a crosswalk: there was no evidence in the record to suggest that the plaintiff was at or near a regular crossing, a crossing at an intersection of roads, or a crossing regulated by traffic signals, and, instead, there was uncontradicted evidence that the plaintiff was walking in the middle of the road coming up the street and was twenty-five feet from the corner, and, thus, the instruction sought by the plaintiff could have misled the jury because there were no facts in the record to support a finding that the plaintiff was at or near a regular crossing or that the defendant was turning into a different street; moreover, under the general verdict rule, this court, having resolved the plaintiff's sole challenge to the court's jury instructions as to negligence and concluded that there was no error, was required to presume that the jury found that the defendant was not negligent, and, thus, the general verdict rule precluded review of the plaintiff's remaining claims relating to the instructions on contributory negligence.

Argued April 9—officially released August 14, 2018

*Procedural History*

Action to recover damages for personal injuries sustained by the plaintiff allegedly caused by the defendant's negligent operation of a motor vehicle, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to a jury before *Dubay, J.*; verdict and judgment for the defendant, from which the plaintiff appealed to this court. *Affirmed.*

*Juri E. Taalman*, with whom, on the brief, were *Taylor Equi* and *Timothy Brignole*, for the appellant (plaintiff).

*Jude Francois*, for the appellee (defendant).

*Opinion*

ELGO, J. In this negligence action, the plaintiff, Ellen Farmer-Lanctot, appeals from the judgment rendered on a general verdict in favor of the defendant, Matthew Shand. On appeal, the plaintiff claims that the trial court improperly denied the plaintiff's request for a jury charge on (1) the sudden emergency doctrine, (2) the standard of care for a pedestrian in a roadway, and (3) the defendant's duty to yield to pedestrians when making a right-hand turn. We disagree and, accordingly, affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On December 31, 2014, the plaintiff and her husband attended a New Year's Eve gathering hosted by Lisa Salazar and Mike Kraman at their residence in the Wynding Hills Road residential subdivision in East Granby (Wynding Hills). Attendees of the gathering also included Carol Lindberg and five others. At approximately 9 p.m. the plaintiff and other attendees of the gathering left the residence and headed out to take a hike through the woods up to a cliff. The group was equipped with headlamps and lights for the hike.

On their way back from the cliff, the group walked down Tunxis Avenue toward Wynding Hills to return to the Salazar and Kraman residence. The group walked into the exit road of the subdivision and began ascending a hill. A grassy center island of the road separated the entrance road and the exit road of the subdivision. At some point prior to walking into the exit of Wynding Hills, the group shut off their lights. At approximately 10:30 p.m., a car, driven by the defendant, was traveling downhill in Wynding Hills toward the exit. At the time, the plaintiff was in the middle of the exit road with Carol Lindberg and was walking up the road. The car traveled around a curve at the bottom of the hill onto the Wynding Hills exit road, spotted the group walking in the road, and stopped prior to reaching the group. Upon seeing the headlights of the defendant's car approaching, the plaintiff jumped out of the road and into the grassy center island of the road approximately twenty-five feet from the curve. The plaintiff testified that she jumped out of the road and over the front corner of the defendant's vehicle because she thought that she was going to be hit by the defendant's vehicle. Consequently, the plaintiff suffered a broken arm.

The plaintiff subsequently commenced the present action, claiming that she suffered personal injuries, economic damages, and noneconomic damages of pain and suffering proximately caused by the defendant's negligence. In his answer, the defendant denied that he was negligent in the operation of his vehicle. In addition, as a special defense, the defendant alleged that the

plaintiff's own negligence was the proximate cause of her injuries. The case was tried to a jury, but no interrogatories were submitted to it. Following trial, the jury returned a general verdict in favor of the defendant and the court rendered judgment accordingly. This appeal followed.

Before addressing the merits of the plaintiff's claim, we first determine whether the general verdict rule applies and precludes our review.[1] "Under the general verdict rule, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall. . . . The rule rests on the policy of the conservation of judicial resources, at both the appellate and trial levels. . . .

"On the appellate level, the rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury verdict that is under appellate review. In a typical general verdict rule case, the record is silent regarding whether the jury verdict resulted from the issue that the appellant seeks to have adjudicated. Declining in such a case to afford appellate scrutiny of the appellant's claims is consistent with the general principle of appellate jurisprudence that it is the appellant's responsibility to provide a record upon which reversible error may be predicated. . . .

"In the trial court, the rule relieves the judicial system from the necessity of affording a second trial if the result of the first trial potentially did not depend upon the trial errors claimed by the appellant. Thus, unless an appellant can provide a record to indicate that the result the appellant wishes to reverse derives from the trial errors claimed, rather than from the other, independent issues at trial, there is no reason to spend the judicial resources to provide a second trial. . . .

"Therefore, the general verdict rule is a rule of appellate jurisprudence designed to further the general principle that it is the appellant's responsibility to provide a record upon which reversible error may be predicated. . . . A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury. . . .

"[Our Supreme Court] has held that the general verdict rule applies to the following five situations: (1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5)

denial of a specific defense, raised under a general denial, that had been asserted as the case was tried but that should have been specially pleaded." (Citations omitted; internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 371–72, 727 A.2d 1245 (1999).

This case falls within the fourth situation listed in *Dowling*—denial of a complaint and pleading of a special defense. In the present case, the defendant's answer denied the plaintiff's allegations of negligence as set forth in the complaint. The defendant also alleged that the plaintiff's own negligence was the proximate cause of her injuries. "[A defendant's] denial of negligence and [his] allegation of contributory negligence constitute[s] two separate and distinct defenses, either one of which could support the jury's general verdict." *Morales* v. *Moore*, 85 Conn. App. 208, 210–11, 855 A.2d 1041 (2004).

The plaintiff contests the propriety of the court's charge as to negligence and contributory negligence. With respect to the negligence charge, the plaintiff claims that the court improperly denied her request to instruct the jury on the defendant's duty to yield to pedestrians when making a right-hand turn. As to the special defense of contributory negligence, the plaintiff claims that the court improperly denied her request to instruct the jury on the sudden emergency doctrine and the standard of care for a pedestrian in a roadway. If there is no reversible error in the charge as to the defendant's negligence, the general verdict must be affirmed and the claimed errors relating to contributory negligence need not be considered. See *Cuartas* v. *Greenwich*, 14 Conn. App. 370, 373–374 n.2, 540 A.2d 1071, cert. denied, 209 Conn. 803, 548 A.2d 436 (1988); see also *Johnson* v. *Pagano*, 184 Conn. 594, 597, 440 A.2d 244 (1981). "[I]f any of the court's instructions are shown to be proper and adequate as to any one of the defenses raised, the general verdict will stand irrespective of any error in the charge as to the others." *Colucci* v. *Pinette*, 185 Conn. 483, 490, 441 A.2d 574 (1981). Thus, we first consider the plaintiff's specific claim pertaining to the court's instructions to the jury regarding negligence.

The plaintiff's sole challenge in this regard is that the trial court improperly declined to instruct the jury in accordance with the plaintiff's request to charge on "the defendant's duty to yield to pedestrians when making a right-hand turn." We disagree.

"[O]ur standard of review concerning preserved claims of improper jury instruction is well settled. . . . A jury instruction must be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in

such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Therefore, [o]ur standard of review on this claim is whether it is reasonably probable that the jury was misled." (Internal quotation marks omitted.) *DeMatteo* v. *New Haven*, 90 Conn. App. 305, 307–308, 876 A.2d 1246, cert. denied, 275 Conn. 931, 883 A.2d 1242 (2005). "The instruction must be adapted to the issues and may not mislead the jury but should reasonably guide it in reaching a verdict." (Internal quotation marks omitted.) *Opotzner* v. *Bass*, 63 Conn. App. 555, 558, 777 A.2d 718, cert. denied, 257 Conn. 910, 782 A.2d 134 (2001), cert. denied, 259 Conn. 930, 793 A.2d 1086 (2002).

"The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . . The purpose of a request to charge is to inform the trial court of a party's claim of the applicable principle of law. . . . In determining whether a trial court improperly declined to instruct the jury in accordance with a party's request to charge, we review the evidence presented at trial in the light most favorable to supporting the . . . proposed charge. . . . A request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given. . . . It follows from this principle, however, that a request to charge must be an accurate statement of the law. . . . Indeed, it is axiomatic that a trial court should not instruct the jury in accordance with a request to charge unless the proposed instruction is a correct statement of the governing legal principles." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Saint Francis Hospital & Medical Center*, 309 Conn. 146, 173–74, 72 A.3d 929 (2013). "Conversely, [t]he trial court has a duty not to submit any issue to the jury upon which the evidence would not support a finding. . . . Accordingly, the right to a jury instruction is limited to those theories for which there is any foundation in the evidence." (Citation omitted; internal quotation marks omitted.) *Bostic* v. *Soucy*, 82 Conn. App. 356, 359, 844 A.2d 878, cert. denied, 269 Conn. 912, 852 A.2d 738 (2004).

The plaintiff requested that the court provide the jury with the following instructions: "It is important to note that a driver of an automobile turning from one road to another, the operator must do so with regard not only to the pedestrian who may be on the regular crossing, but also to any person or vehicle lawfully on the highway immediately beyond and close to the highway. And a pedestrian under such circumstances has the right-of-way over a car making a turn." The plaintiff avers that the instructions provide that the defendant has a "duty to yield to pedestrians when making a right-handed turn" and such requested instructions are in

accordance with Wright & Ankerman, 2 Connecticut Jury Instructions (4th Ed.) § 587, which is titled "Crossing at Crosswalk." Subsection (d) of § 587 provides: "A driver of an automobile turning into a street must do so with due regard not only to the pedestrian who may be on the regular crossing, but also to any person or vehicle lawfully on the highway immediately beyond and close to the highway. And a pedestrian under such circumstances has the right of way over a car making a turn."

We note that the plaintiff's briefing of this issue borders on inadequate as she fails to provide citations to facts in the record to establish that the plaintiff was entitled to such an instruction, and fails to cite to any appellate authority in support of her position. Nonetheless, our review of the evidence presented at trial reveals that the court properly declined to instruct the jury as requested.

The undisputed testimony and documentary evidence in the present case indicated that at approximately 10:30 p.m. the defendant was traveling around a curve as he made his way toward the exit of Wynding Hills, not executing a right-hand turn. After the defendant completed navigating the curve, he stopped approximately five feet down the road. There is no evidence in the record to suggest that the plaintiff was at or near a regular crossing, a crossing at an intersection of roads, or a crossing regulated by traffic signals. Instead, there is uncontradicted evidence that the plaintiff was walking in the middle of the road "coming up the street" and that the plaintiff was "[twenty-five] feet from the corner." Indeed, in this case, the instruction sought by the plaintiff could have misled the jury because there are no facts in the record to support a finding that the plaintiff was at or near a regular crossing nor that the defendant was turning into a different street. As previously stated, the court has a duty not to submit any issue to the jury on which the evidence would not support a finding. Accordingly, when viewing the evidence in the light most favorable to supporting the plaintiff's charge, we conclude that the court properly declined to instruct the jury in accordance with the model instructions provided in § 587 (d).

This court having resolved the plaintiff's sole challenge to the court's jury instructions as to negligence and having concluded that there is no error, the general verdict rule requires us to presume that the jury found that the defendant was not negligent.[2] Therefore, the general verdict rule precludes our review of the plaintiff's remaining claims relating to the instructions on contributory negligence, and the verdict must stand.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the parties did not brief the issue of the general verdict rule, we raised the issue at oral argument and the parties did not seek supplemental

briefing. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut*, 311 Conn. 123, 163 n.35, 84 A.3d 840 (2014) ("this court occasionally has raised an issue sua sponte when the parties have misconstrued or overlooked the applicable law and the failure to raise the issue would result in the creation of unsound or questionable precedent or an inconsistency in the law").

[2] In her brief, the plaintiff states that the trial court's failure to give her request to charge constitutes reversible harm. "Determining that the court's charge was improper . . . does not end our inquiry. We must also determine whether the error was harmful before a new trial can be ordered. . . . [I]t is axiomatic . . . that not every error is harmful. . . . [W]e have often stated that before a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful. . . . An instructional impropriety is harmful if it is likely that it affected the verdict." (Citation omitted; internal quotation marks omitted.) *DeMatteo* v. *New Haven*, 90 Conn. App. 305, 310–11, 876 A.2d 1246, cert. denied, 275 Conn. 931, 883 A.2d 1242 (2005). We note, however, that the plaintiff merely asserts that the alleged error was harmful and failed to analyze the issue of harm. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than [mere] abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Bicio* v. *Brewer*, 92 Conn. App. 158, 172, 884 A.2d 12 (2005). Assuming arguendo that any of alleged improprieties were in fact improper, the plaintiff's claims would not succeed due to her failure to brief the issue adequately and failure to demonstrate that the alleged error affected the verdict.