******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

NEXHMIJE ZHULEKU ET AL. *v.* NAUGATUCK
VALLEY RADIOLOGY ASSOCIATES ET AL.
(AC 47394)

Elgo, Moll and Seeley, Js.

*Syllabus*

The plaintiffs, following a jury trial, appealed from the trial court's judgment
for the defendants in their medical malpractice action. The plaintiffs claimed,
inter alia, that the court abused its discretion in sustaining the defendants'
objection to their amended revised complaint. *Held*:

The trial court did not abuse its discretion in sustaining the defendants'
objection to the plaintiffs' amended revised complaint, which had been filed
during jury selection and on the eve of the presentation of evidence, as
the court reasonably determined that the new allegations in the proposed
complaint would have worked an injustice to the defendants, who had no
prior notice regarding the proposed new claims.

The trial court did not abuse its discretion by refusing the plaintiffs' request
to charge the jury that the plaintiff in a medical negligence case may prove
the standard of care and its breach through the testimony of the defendant,
as, even if this court were to agree with the plaintiffs that the court's charge
was improper, the plaintiffs failed to brief the issue of harm adequately and,
thus, demonstrate that the alleged instructional error affected the verdict.

The trial court did not abuse its discretion by denying the plaintiffs' request
to give a consciousness of liability instruction to the jury, as the record was
devoid of any evidence that supported the giving of such an instruction.

Argued January 15—officially released April 22, 2025

*Procedural History*

Action to recover damages for the defendants' alleged
medical malpractice, and for other relief, brought to
the Superior Court in the judicial district of Waterbury,
where the court, *Pierson, J.*, granted the plaintiffs'
motion to substitute Lauren Perugini, executrix of the
estate of the defendant Josephine Perugini, as a defen-
dant; thereafter, the court, *Massicotte, J.*, sustained the
defendants' objection to the plaintiffs' filing of an
amended revised complaint; subsequently, the case was
tried to the jury before *Massicotte, J.*, who granted
the defendants' motion for a directed verdict as to the

substitute plaintiff; thereafter, verdict for the named defendant et al., and the court, *Massicotte, J.*, rendered judgment for the defendants, from which the plaintiffs appealed to this court. *Affirmed.*

*Eddi Z. Zyko*, for the appellants (plaintiffs).

*Thomas J. Plumridge*, with whom were *Joseph M. Walsh* and, on the brief, *Sally O. Hagerty*, for the appellees (named defendant et al.).

*Opinion*

SEELEY, J. In this medical malpractice action, the plaintiffs, Nexhmije Zhuleku (Zhuleku) and her husband, Fuat Zhuleku (husband), appeal from the judgment of the trial court rendered after the court directed the verdict in favor of the defendant Lauren Perugini (substitute defendant), in her capacity as executrix of the estate of the defendant Josephine Perugini (Perugini), and, after a jury trial, in favor of the defendants Naugatuck Valley Radiology Associates (NVRA)[1] and Gregory D. Gersten.[2] The plaintiffs claim that the court improperly (1) sustained the defendants' objection to their amended revised complaint and (2) instructed the jury after denying their requests to charge. We disagree and, accordingly, affirm the judgment of the court.

At trial, the jury was presented with evidence of the following relevant facts. On May 18, 2016, Zhuleku underwent a surgical procedure on her right leg, known

---

[1] NVRA is also known as Naugatuck Valley Radiology.

[2] On June 27, 2022, the court granted a motion to substitute Lauren Perugini, in her capacity as executrix of Perugini's estate, as a defendant in this matter following Perugini's death on November 5, 2021, during the pendency of this action. We note that the estate of Josephine Perugini is mislabeled as the "estate of Joseph Perugini" in the trial court file. For clarity in this opinion, we refer to Lauren Perugini as the substitute defendant, to Josephine Perugini as Perugini, and to NVRA, Gersten, and the substitute defendant collectively as the defendants.

as a laser vein ablation, at NVRA's office in Prospect. The procedure was performed by Gersten, a radiologist employed by NVRA. Following this procedure, on May 24, 2016, Zhuleku called NVRA and, later that day, received a call back from Perugini, a radiology technician employed by NVRA. Zhuleku claims that, during this phone call, she reported that she was experiencing pain and redness in relation to the procedure but that Perugini told her to "be patient." Several days later, on May 29, 2016, Zhuleku was admitted to Saint Mary's Hospital in Waterbury, where she spent six days receiving treatment for an infection that was caused by the ablation procedure before being discharged on June 4, 2016. She subsequently spent thirty days recovering at a rehabilitation facility.

On July 17, 2018, the plaintiffs commenced this action. On June 3, 2019, they filed a revised complaint (operative complaint), which sets forth four counts: the first three allege negligence against NVRA, Gersten, and Perugini, respectively, for their conduct concerning Zhuleku, and the fourth alleges negligence against those defendants for their conduct pertaining to Zhuleku's husband. The allegations of negligence in the operative complaint are premised on the failure of NVRA, Gersten, and Perugini to provide appropriate postoperative care, namely, their failure to respond in an appropriate manner to Zhuleku's phone call reporting her symptoms by scheduling a postoperative visit and/or prescribing antibiotics.

On January 22, 2024, without having filed a request for leave to amend, the plaintiffs filed an amended revised complaint pursuant to Practice Book § 10-62.[3] The plain-

---

[3] Practice Book § 10-62 provides: "In all cases of any material variance between allegation and proof, an amendment may be permitted at any stage of the trial. If such allegation was made without reasonable excuse, or if the adverse party was actually misled thereby to his or her prejudice in maintaining the action or defense upon the merits, or if such amendment requires postponement of the trial or additional expense to the adverse party and this is shown to the satisfaction of the judicial authority, such

tiffs' proposed amended revised complaint sought to add three new counts of negligence per se against NVRA, Gersten, and Perugini for their alleged violations of certain state statutes and regulations, as well as industry rules pertaining to radiologist technicians.[4] At the time that the plaintiffs sought to amend their complaint, three days of jury selection already had taken place and the parties had selected four jurors. On January 30, 2024, the court sustained the defendants' objection to the amended revised complaint. Thereafter, the case proceeded to a jury trial, which was held before the court, *Massicotte, J.*, on various days between January 31 and February 15, 2024. At trial, the plaintiffs testified and presented testimony from their son; Gersten; two medical doctors, Aaron Mark Fischman and Peter Connolly; and several current and former employees of NVRA. The defendants presented testimony from Harold Brem, a general surgeon. On February 8, 2024, the defendants filed a motion for a directed verdict, in which they asserted that the plaintiffs had failed to establish a prima facie case with respect to the standard of care. That same day, the court granted the motion, in part, as to the substitute defendant and reserved decision on the motion with respect to Gersten and NVRA. On February 15, 2024, the jury returned a verdict in favor of Gersten and NVRA, and, thereafter, the court rendered judgment in favor of the defendants. This

---

amendment shall be made only upon payment of costs or upon such terms as the judicial authority may deem proper; but in any other case, without costs. Immaterial variances shall be wholly disregarded."

[4] Specifically, the plaintiffs alleged, inter alia, that NVRA, Gersten, and Perugini were negligent per se for violating (1) §§ 19a-14-40 through 19a-14-43 of the Regulations of Connecticut State Agencies, which pertain to medical records of patients and the obligations of licensed physicians with respect to such records; (2) various statutes governing radiologist assistants; (3) industry safety standards, as well as The American Registry of Radiologic Technologists (ARRT) Standards of Ethics (2023), Code of Ethics § (6), p. 1; and (4) NVRA's written safety policies and written post ablation instruction.

appeal followed.[5] Additional facts and procedural history will be set forth as necessary.

I

The plaintiffs first claim that the court abused its discretion by sustaining the defendants' objection to their amended revised complaint. Specifically, they argue that they should have been permitted to file an amended revised complaint pursuant to Practice Book § 10-62.[6] Although the plaintiffs' appellate brief is not a model of clarity, we distill the plaintiffs' claim to be one asserting that the court erred because any variances between the proposed amended revised complaint and the operative complaint were immaterial. They also contend that the defendants were not misled, that discovery was complete, and that "[a]ll that would be required [was] for the defendants to file their answer to the three counts sounding in negligence per se if they so [chose]." The plaintiffs further assert that "Connecticut courts have long recognized that a health care provider may commit ordinary negligence, as opposed to medical malpractice, in the course of treating a patient or providing medical services," suggesting that expert testimony would not be needed to determine

---

[5] Following oral argument before this court, the plaintiffs filed two notices of supplemental authority pursuant to Practice Book § 67-10. The first notice, dated January 27, 2025, cites *Suprynowicz* v. *Tohan*, 351 Conn. 75, 328 A.3d 646 (2025), which was decided the day prior to oral argument in this appeal, for the proposition that a health care provider may commit ordinary negligence, as opposed to medical malpractice, in the course of treating a patient. The second notice, dated March 20, 2025, cites *State* v. *Jones*, 351 Conn. 324, 344, 330 A.3d 118 (2025), in which our Supreme Court determined that the trial court did not abuse its discretion in admitting consciousness of guilt evidence. The plaintiffs cite *Jones* in support of their assertion that the trial court in the present case erred in failing to give an instruction on consciousness of liability in a civil trial. In light of our resolution of the claims raised on appeal, we are not persuaded that either case is apposite to the present case.

[6] See footnote 3 of this opinion.

whether the defendants were negligent in their postoperative care of Zhuleku. (Internal quotation marks omitted.) Thus, they argue that their proposed amendment should have been permitted and that "there was no 'sound reason'" for the court's ruling.

The defendants counter that the court did not abuse its discretion in precluding the plaintiffs from amending their complaint to add new counts of negligence per se while the parties were engaged in jury selection, as the proposed new claims were "entirely distinct from the medical negligence claims that actually had been pleaded in the case to that time and would have caused undue prejudice to the [defendants]."[7] The defendants

[7] The defendants also point out that the plaintiff's reliance on Practice Book § 10-62 is misplaced, as that rule of practice allows for pleadings to be amended at any stage of the trial to conform the pleading with the proof presented at trial, so long as there is no material variance between the amended pleading and the proof. According to the defendants, because jury selection was ongoing at the time of the plaintiffs' filing, there had been no evidence presented and, hence, no "proof." The defendants contend that the plaintiffs, instead, should have filed a request for leave to amend their complaint pursuant to Practice Book § 10-60. We agree. The issue before us in this appeal is not whether the plaintiffs' proposed amendment constituted a material variance from the operative complaint. Practice Book § 10-62 permits a party to amend its pleadings in "all cases of any material variance between allegation and proof," which is a "departure of the proof from the facts as alleged"; (internal quotation marks omitted) *Marchetti* v. *Ramirez*, 40 Conn. App. 740, 747, 673 A.2d 567 (1996), aff'd, 240 Conn. 49, 688 A.2d 1325 (1997); that causes the opposing party to be "prejudiced in maintaining its defense, surprised by the proof or misled by the allegations in the complaint . . . ." Id., 748. The purpose of such an amendment is for a party, when certain conditions have been met, to avoid a potential reversal of a verdict in its favor due to the existence of a material variance; see *Strimiska* v. *Yates*, 158 Conn. 179, 185, 257 A.2d 814 (1969) ("Whenever a disparity between the allegations and the evidence develops, counsel should move to amend the pleadings so that they conform with the evidence. Such an amendment would obviate the possibility of a judgment being reversed owing to the existence of a material variance."); and not, as the plaintiffs seem to suggest, for a party simply to amend its complaint at any stage of the proceedings so long as any variances between the operative complaint and the proposed amendment are immaterial. The plaintiffs filed the proposed amended revised complaint more than five years after initiating the underlying action and before any evidence was presented. Their proposed

note that, at the time of the proposed amendment, the pleadings in the case had been closed for more than four years, that the plaintiffs never had made an effort to amend the complaint despite ongoing discovery in the case, that permitting a change in "the theory of the case . . . would have required new expert reviews, additional depositions, including of experts already deposed in the case, and other discovery," and that allowing the amendment on the eve of trial "would have been fundamentally unfair" to the defendants, who had no notice of the new claims and had prepared their case for trial in reliance on the pleadings. We agree with the defendants.

The following additional procedural history is relevant to our resolution of this claim. The plaintiffs' proposed amended revised complaint sought to add three new counts of negligence per se against NVRA, Gersten, and Perugini based on violations of certain state statutes and regulations, as well as industry rules pertaining to radiologist technicians. The plaintiffs asserted that, through extensive discovery, they became aware that NVRA, Gersten, and Perugini had engaged in such violations and that these new allegations properly expanded and amplified the allegations already pleaded.

On January 24, 2024, the defendants filed an objection to the plaintiffs' amended revised complaint, and the plaintiffs subsequently filed a memorandum of law in opposition to the defendants' objection. On January 30, 2024, after hearing argument on the defendants'

amendment was therefore governed by Practice Book § 10-60 (a), not Practice Book § 10-62. See *GMAC Mortgage*, *LLC* v. *Ford*, 144 Conn. App. 165, 180–81, 73 A.3d 742 (2013) (recognizing that leave to amend "ordinarily [can] be obtained only in accordance with the provisions of Practice Book § 10-60"). Nevertheless, regardless of whether Practice Book § 10-62 or Practice Book § 10-60 (a) applies, we conclude that the court undertook the proper analysis when declining to allow the amended pleading, as we explain in this opinion.

objection, the court, *Massicotte, J.*, sustained the objection, stating in relevant part: "So, in this case, what's changed is not just the facts. The amendments inject new causes of action based on violation[s] of certain regulations never previously mentioned in the original complaint and allege that the defendants' violations of those statutes caused the harm to the plaintiff[s].

"The plaintiffs' original case is a medical malpractice case in which there are competing experts on whether the defendants violated the standard of care in such case and whether . . . the violation caused the injuries. The plaintiffs' new allegations require the defendants to defend the case on a different standard of care, namely, their duty to keep records in accordance with regulations and their duty to conform to radiology assistant regulations. Defending against the additional [causes of action] that the newly named statutes and regulations create, [the] duties which were violated, and which violations caused harm to the plaintiff[s], are material changes that would lead [to] the defendants [being] unprepared to defend.

"The allegations would require substantial review and consideration, and the defendants here deserve a fair opportunity to decide if an additional expert is required or to depose experts provided by . . . the plaintiff[s] in this case. While it may be the case that the plaintiff[s] asked questions of witnesses [at their depositions] as to whether or not they kept records, those questions aren't necessarily related to the dut[ies] established by the regulations. Although clearly, they are . . . they could also support a violation of the standard of care for medical doctors. And so, in defending against those questions, there wasn't notice that they would be used for a different purpose.

"So . . . Practice Book § 10-3 (a)[8] requires that when any claim in a complaint is grounded on a statute, the statute must be specifically identified by its number. The plaintiffs' [operative] complaint did not identify the statutes and regulations at issue. Although our courts, and this is a quote, 'have repeatedly recognized that the rule embodied in Practice Book § 10-3 [(a)] is directory and not mandatory, notice is the critical consideration in such instances . . . .

" 'As long as the defendant is sufficiently apprised of the nature of the action, the failure to comply with the directive of Practice Book § 10-3 [(a)] will not bar recovery.' Here, the court can find no notice that compliance with the recordkeeping requirements and regulations related to radiology assistants would be an issue. The court finds that if the amendments were permitted, the defendants would be misled as to the charge that they are required to meet and would be prejudiced in maintaining their defense on the merits of this case.[9] . . . The amendment is therefore disallowed, and the objection is sustained." (Footnotes added.)

We next set forth the standard of review that governs the plaintiffs' claim. "This court has stated that [General

___

[8] Practice Book § 10-3 (a) provides: "When any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number."

[9] In its decision, the court provided two grounds for disallowing the amendment. Because we agree with the first ground, we need not address the court's second ground for sustaining the objection to the amendment, which was "that negligence per se, as related to the statutes and regulations cited in this case, cannot substitute for the standard of care in this medical malpractice action." Nevertheless, we note that the court's second ground for disallowing the amendment was based on its reasoning that "the negligence per se claims [in the amended revised complaint] are really medical malpractice claims" and that "a negligence per se action is not available where a statute provides a remedy to the plaintiff . . . [and] the remedy provided to the plaintiff[s] is a medical malpractice case under [General Statutes §] 52-184c."

Statutes §] 52-128 and Practice Book § 10-59 allow the curing of any defect [or] mistake in a complaint as of right within thirty days of the return date. If an amendment is as of right, the amendment takes effect ab initio. . . . Practice Book § 10-60 allows a plaintiff to amend his or her complaint more than thirty days after the return day [only] by [order of the] judicial authority, written consent of the adverse party, or filing a request for leave to amend with the amendment attached." (Internal quotation marks omitted.) *25 Grant Street, LLC* v. *Bridgeport*, 199 Conn. App. 600, 622, 237 A.3d 767, cert. denied, 335 Conn. 966, 240 A.3d 283 (2020).

"A trial court's ruling on a motion of a party to amend its complaint will be disturbed only on the showing of a clear abuse of discretion. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. [An appellate] court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [plaintiffs'] burden in this case to demonstrate that the trial court clearly abused its discretion. . . .

"A trial court may allow, in its discretion, an amendment to pleadings before, during, or after trial to conform to the proof. . . . Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial." (Internal quotation marks omitted.) *Rodriguez* v. *Hartford*, 224 Conn. App. 314, 325, 312 A.3d 85, cert. denied, 349 Conn. 907, 313 A.3d 512 (2024), and cert. denied, 349 Conn. 907, 313 A.3d 512 (2024). "The trial court is in the best position to assess the burden which an amendment would impose on the opposing party in light of the facts of the particular

case." (Internal quotation marks omitted.) *Booth* v. *Park Terrace II Mutual Housing Ltd. Partnership*, 217 Conn. App. 398, 432, 289 A.3d 252 (2023).

In the present case, our review of the court's thorough and well reasoned decision convinces us that the court did not abuse its discretion when it refused to allow the plaintiffs to amend their complaint to add new counts alleging negligence per se during jury selection and on the eve of the presentation of evidence. The court concluded that to allow the amendment would violate Practice Book § 10-3 (a) and prejudice the defendants, who had no prior notice regarding the proposed new claims. See id., 433 (trial court's ruling denying request to amend complaint did not constitute abuse of discretion when amendment sought to add new theories of liability that would require additional discovery and occasion further delay, and likely would have prejudiced defendants). The plaintiffs, in their proposed amendment, sought to raise negligence per se claims based on statutory violations more than five years after originally pleading claims sounding in medical malpractice, and while jury selection already was underway. The court found that the new allegations of negligence per se involved "material changes" that the defendants were "unprepared to defend" and that might have required an additional expert and more discovery. There is nothing in the record demonstrating that the defendants were put on notice that they would have to defend against claims grounded in the statutes and regulations referred to in the proposed amended revised complaint. Thus, contrary to the plaintiffs' assertion, the court provided a sound basis for its decision to preclude the plaintiffs from filing the amended pleading alleging new counts of negligence per se.

The court, which based its decision, in part, on its determination that, "if the amendments were permitted, the defendants would be misled as to the charge that

they are required to meet and would be prejudiced in maintaining their defense on the merits of this case," properly considered whether permitting the amendment would have "work[ed] an injustice to either [of the parties] . . . ." (Internal quotation marks omitted.) *Rodriguez* v. *Hartford*, supra, 224 Conn. App. 325; see also *Booth* v. *Park Terrace II Mutual Housing Ltd. Partnership*, supra, 217 Conn. App. 433 ("[i]n light of the delay and likelihood that the amendment would prejudice the defendants, we conclude that the court's ruling did not reflect an abuse of its discretion"); *Beckenstein* v. *Reid & Riege, P.C.*, 113 Conn. App. 428, 439–40, 967 A.2d 513 (2009) (trial court did not abuse its discretion in denying request to amend complaint when proposed amendment would have required additional discovery and caused undue delay). Accordingly, in light of the court's reasonable determination that the new allegations in the proposed amended revised complaint would have worked an injustice to the defendants, we conclude that the court did not abuse its discretion by sustaining the defendants' objection to the plaintiffs' amended revised complaint.

## II

In their remaining claims on appeal, the plaintiffs assert that the court abused its discretion by improperly instructing the jury on two occasions. Specifically, they contend that the court improperly denied (1) their request to include specific language in the jury charge indicating that "a plaintiff in a medical malpractice action may prove the proper standard of care and its breach through the testimony of the defendant," and (2) their request to give a consciousness of liability instruction to the jury.

Before examining each claim in turn, we set forth the standard of review and legal principles applicable to claims of instructional error. "A challenge to the

validity of jury instructions presents a question of law. Our review of this claim, therefore, is plenary. . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts." (Citation omitted; internal quotation marks omitted.) *Walencewicz* v. *Jealous Monk, LLC*, 228 Conn. App. 349, 379, 325 A.3d 271, cert. denied, 350 Conn. 927, 326 A.3d 249 (2024). "[T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Therefore, [o]ur standard of review on this claim is whether it is reasonably probable that the jury was misled." (Internal quotation marks omitted.) *Martin* v. *Olson*, 226 Conn. App. 392, 402, 318 A.3d 1067, cert. denied, 350 Conn. 902, 322 A.3d 1059 (2024).

"It is well established that not every improper jury instruction requires a new trial because not every improper instruction is harmful. [W]e have often stated that before a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful. . . . An instructional impropriety is harmful if it is likely that it affected the verdict." (Internal quotation marks omitted.) *Walencewicz* v. *Jealous Monk, LLC*, supra, 228 Conn. App. 380. "[T]o determine whether the court's instructional impropriety was harmless, we consider not only the nature of the error, including its natural and probable effect on a party's ability to place his full case before the jury, but the likelihood of actual

prejudice as reflected in the individual trial record, taking into account (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (Internal quotation marks omitted.) Id., 384–85.

## A

In their first claim of instructional error, the plaintiffs assert that "the trial court erred and committed harmful error in refusing to charge the jury that the plaintiff in a medical negligence case may prove the standard of care and its breach through the testimony of the defendant." The plaintiffs argue that, as a result of the court's failure to include their requested language in the charge, the court's jury charge "did not provide the jury with sufficient guidance in reaching a correct verdict."[10]

On the issue of harm, the plaintiffs' principal appellate brief contains one sentence, without citation to authority, stating that, because "[t]he omission of the instruction did not provide the jury with sufficient guidance in reaching a correct verdict . . . the error is not harmless . . . ." Aside from that one sentence, their brief is devoid of any analysis concerning the harmfulness of the court's alleged instructional error. Such a conclusory statement without any citation to case law or further analysis is insufficient to surmount the plaintiffs' burden of demonstrating that the omission "likely . . . affected the verdict"; (internal quotation

---

[10] The court's instructions to the jury provided in relevant part: "The plaintiff[s] ha[ve] a burden of proving by a fair preponderance of the evidence that the defendants' conduct represented a breach of the prevailing professional standard of care. Under our law, the plaintiff[s] must prove this by expert testimony. More specifically, the plaintiff[s] must establish through expert testimony both the applicable standard of care and that the defendants' conduct represented a breach of that standard. You may or may not decide that [Gersten] is an expert, and you may or may not decide that he established the applicable standard of care."

marks omitted) *Walencewicz* v. *Jealous Monk, LLC*, supra, 228 Conn. App. 380; or to avoid abandoning the claim due to inadequate briefing.[11] See, e.g., *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 749, 183 A.3d 611 (2018) (rejecting claims of instructional error as inadequately briefed because "the defendant's harm analyses consist of only cursory statements"); *Farmer-Lanctot* v. *Shand*, 184 Conn. App. 249, 258 n.2, 194 A.3d 839 (2018) (plaintiff could not succeed on claim of instructional error due to her failure to brief issue adequately and to demonstrate that alleged error affected verdict when "the plaintiff merely assert[ed] that the alleged [instructional] error was harmful and failed to analyze the issue of harm"); *Bicio* v. *Brewer*, 92 Conn. App. 158, 172 and n.12, 884 A.2d 12 (2005) (determining that plaintiff, whose appellate brief contained only single sentence and citation in discussion of harm, "failed both to demonstrate the harm of the court's instruction and to brief the issue adequately"). Consequently, even if this court were to agree with the plaintiffs that the court's charge was improper, the plaintiffs, nonetheless, cannot succeed on their claim due to their failure to brief the issue of harm adequately and, thus, to demonstrate that the alleged instructional error affected the verdict. See *Farmer-Lanctot* v. *Shand*, supra, 258 n.2.

B

The plaintiffs' second claim of instructional error pertains to the court's denial of the plaintiffs' request to

---

[11] "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Internal quotation marks omitted.) *Spinnato* v. *Boyd*, 231 Conn. App. 460, 480–81,    A.3d    (2025).

give a consciousness of liability instruction to the jury. The plaintiffs argue that the defendants' failure to present Perugini for a deposition amounted to the "concealment of evidence" by the defendants, warranting a consciousness of liability instruction. We are not persuaded.

The following additional factual and procedural history is relevant to our resolution of this claim. On May 26, 2021, the plaintiffs filed a motion to compel, attaching a notice of deposition of Perugini, which was scheduled to take place at the office of the plaintiffs' counsel on June 7, 2021. Two days prior to the filing of the motion to compel, the defendants' counsel had sent an email to the plaintiffs' counsel advising him that Perugini was "ill and undergoing treatment and unable to sit for a deposition" and that "[Perugini's] best estimate as to her availability [was] the [f]all." She concluded the email by asking the plaintiffs' counsel to "[p]lease call . . . so that [they could] work out a plan."[12] The defendants' counsel subsequently informed the plaintiffs' counsel that Perugini was suffering from cancer. The deposition ultimately was scheduled for October 29, 2021; however, it was cancelled because Perugini was hospitalized with an infection. Perugini

_____

[12] In response, the plaintiffs' counsel sent the defendants' counsel an email stating: "[W]hat you describe about [Perugini] sounds very serious. My clients and my thoughts and prayers go out to her and her family. I trust, but I must verify. Accordingly, before we talk . . . I need a detailed [n]ote from her respective treating physician(s) explaining her malady, why she [cannot] sit for her noticed deposition until the fall, will her capability to sit for her deposition decline further or get better by the end of the fall that is some six months away and her prognosis, including—and in light of the situation I must be direct—the likelihood of her passing before the end of said six months or indeed the trial."

The defendants' counsel responded with the following email: "With due respect, you are not entitled to [Perugini's] protected health information nor are you entitled to private information about her prognosis. [Attorney Ilyssa Kelson] is an officer of the court and has conveyed to you that our client is currently having treatment which prevents her from appearing for a deposition. Thus, that is all the verification you need and we will not provide other details absent a court order."

died approximately one week later, on November 5,
2021. See footnote 2 of this opinion.

On December 1, 2023, the plaintiffs filed a proposed
preliminary request to charge the jury, which included
a charge labeled "evidence of consciousness of liabil-
ity."[13] On January 30, 2024, after hearing argument from
the parties on the issue, the court denied the plaintiffs'
request for a consciousness of liability[14] jury charge,
stating in relevant part: "[T]here's no reason to believe
that . . . when [Perugini] was asked to be deposed in
the late spring and summer that she [knew she] was
going to die in the fall, thereby intentionally avoiding
a deposition. And so, from an evidentiary standpoint
. . . the [plaintiffs' counsel] has provided no basis to
claim that the inability to get [Perugini] to sit for a

___

[13] The plaintiffs' proposed jury charge stated in relevant part: "Conduct
of a defendant after an event may be admitted as consciousness of liability.
Flight from the scene of an accident, concealment of evidence, intimidation
of a witness or giving a false statement are admitted to show consciousness
of responsibility. . . . The plaintiffs allege that [the emails sent and the
suggestion of death filed by the defendants' counsel] was concealment of
material evidence—what were [Perugini's] action/statement in this matter
and, particularly, in view of [Zhuleku's] telephone calls o[n] May 20 and
24, 2016, to the defendant seeking immediate treatment pursuant to the
defendants' post ablation instruction—and/or was the defendants' said email
statement of May 24, 2021, at 1:50 p.m. false—and show consciousness of
responsibility, which the defendants deny. Determination as to such is up
to you, ladies and gentlemen of the jury, using all my previous guidance
concerning the evidence and analysis thereof." (Citations omitted.) This
proposed jury charge also included a transcription of the emails between
the parties' counsel regarding the deposition of Perugini and the suggestion
of death filed by the defendants.

[14] In criminal cases, "[e]vidence that an accused has taken some kind of
evasive action to avoid detection for a crime, such as flight, concealment
of evidence, or a false statement, is ordinarily the basis for a [jury] charge on
the inference of consciousness of guilt." (Internal quotation marks omitted.)
*State* v. *Pugh*, 190 Conn. App. 794, 812 n.6, 212 A.3d 787, cert. denied, 333
Conn. 914, 217 A.3d 635 (2019). In civil cases in which such evidence has
been presented, a similar jury charge may be given on the inference of
"consciousness of liability." See, e.g., *Young* v. *Falk*, 34 Conn. App. 852,
856–57, 643 A.2d 1314 (1994).

deposition for this time period is probative of a consciousness of guilt or of civil liability. The consciousness of guilt theory that the [plaintiffs' counsel] relies on is applied primarily in criminal cases [in which a] defendant lies about his actions, flees from the scene of the crime, intimidates a witness, or uses a false name, and that's from *Spearman* v. *Commissioner of Correction*, [164 Conn. App. 530, 138 A.3d 378, cert. denied, 321 Conn. 923, 138 A.3d 284 (2016)].

"So, while [our] courts have permitted in some civil cases the tortfeasor's postincident actions to be admitted as a consciousness of liability, the plaintiff[s] ha[ve] pointed to no case that permits the failure to sit for a deposition within a discrete period of time followed by death to be admitted for the purpose of consciousness of guilt, and the court declines to do so here for the reasons previously stated and for the following reasons. The reason why this is even an issue is because [Perugini] died months after the plaintiff[s] began the process of attempting to depose her. Her death is the ultimate reason why she could not be deposed. It's nonsensical to ask a jury to conclude that by getting sick and dying, [Perugini] ha[d] a consciousness of guilt. And the case was pending years before the plaintiff[s] attempted to take the . . . deposition and continued on for years after the attempt. There's no reason to believe that [Perugini] would not have sat for a deposition before she became ill or after she became better.

"It's clear that the [plaintiffs] [were] told that [Perugini] was very ill and would not be able to sit for a deposition. There's no reason to believe the contrary. I recognize that counsel wanted to know for sure, but that's not a basis for saying that this evidence is necessary as a consciousness of guilt. It's quite common in civil litigation for the parties to take months to find a convenient date to depose a party and in some cases, where the defendant wilfully avoids a deposition prior

to trial, preventing the plaintiff from deposing him. After a reasonable amount of time to make convenient arrangements, it may be appropriate to give this instruction. . . .

"Under the circumstances of this case, to include [in the jury charge] that [Perugini] died three years before trial to prevent her deposition because of a consciousness of guilt . . . is not something that the court is willing to allow the jury to even think about. It's clearly speculation, and this line of questioning is not probative, and its value is nearly nonexistent. It relies completely on speculation unsupported by any evidence, and the evidence to the contrary is that she was prepared to sit for a deposition in the fall, and unfortunately, she died before she could sit for the deposition. So, the court is not . . . going to permit a jury instruction, along the lines requested by the plaintiff[s], that her failure to sit [for a deposition] is a consciousness of guilt."

On the basis of our review of the record, we conclude that the plaintiffs have failed to meet their burden of showing that it was reasonably probable that the jury was misled by the court's omission of their requested consciousness of liability jury instruction, as the court correctly determined that the instruction was unsupported by any evidence in the record that would give rise to a reasonable inference that Perugini and/or the defendants' counsel were putting off Perugini's deposition to limit the defendants' liability exposure. The evidence at trial demonstrated that Perugini died six months after notice was given that the plaintiffs wanted to depose her and one week after the cancellation of her deposition that was scheduled for October 29, 2021. See *Martin* v. *Olson*, 226 Conn. App. 392, 402, 318 A.3d 1067, cert. denied, 350 Conn. 902 (2024). Given this timeline and the lack of any affirmative evidence in the record showing that Perugini or the defendants' counsel

sought to avoid the deposition, the court was correct that consciousness of liability was not a proper consideration for the jury in the present case. "[T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . It is established law that it is error for a court to submit to the jury an issue [that] is wholly unsupported by the evidence." (Internal quotation marks omitted.) *Perdikis* v. *Klarsfeld*, 219 Conn. App. 343, 361, 295 A.3d 1017, cert. denied, 348 Conn. 903, 301 A.3d 528 (2023); see also *Fajardo* v. *Boston Scientific Corp.*, 341 Conn. 535, 577, 267 A.3d 691 (2021) (rejecting instructional challenge because court could not "conclude that the plaintiffs produced sufficient evidence to warrant [the] instruction" in product liability case where plaintiffs claimed they were entitled to "reasonable alternative design" instruction); *Wager* v. *Moore*, 193 Conn. App. 608, 624, 220 A.3d 48 (2019) ("Issues that are not supported by the evidence should not be submitted to the jury. . . . The trial court should not submit to the jury any issue that is foreign to the facts in evidence or for which no evidence was offered." (Citation omitted; internal quotation marks omitted.)); *State* v. *Pagano*, 23 Conn. App. 447, 449–50, 581 A.2d 1058 (recognizing that defendant's requested jury charge "would be warranted . . . if sufficient evidence was introduced to justify it" (internal quotation marks omitted)), cert. denied, 217 Conn. 802, 583 A.2d 132 (1990). In the present case, there is simply nothing in the record to support the notion that the defendants demonstrated a consciousness of liability by failing to have Perugini deposed before she died, and the plaintiffs' claim is based on pure speculation. Thus, the plaintiffs have failed to demonstrate that it was reasonably probable that the jury was misled by the court's omission of the requested consciousness of liability instruction, as the

record is devoid of any evidence that supports the giving of such an instruction.[15] Accordingly, we reject the plaintiffs' second claim of instructional error.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[15] Even if the omission of the requested instruction were improper, the plaintiffs also have not met their burden of establishing that the omission of the requested instruction was harmful error. See *Walencewicz* v. *Jealous Monk, LLC*, supra, 228 Conn. App. 380. The only argument the plaintiffs made in this respect is contained in a lone sentence in their appellate reply brief, which states: "The omission was unquestionably damaging because it cannot be stated that consciousness of liability was uncontested and the verdict was backed by overwhelming evidence, implying that the jury decision would have been the same without the error." This statement alone is insufficient to establish that the omission of this requested jury charge likely affected the verdict. See *Walencewicz* v. *Jealous Monk, LLC*, supra, 380; see also *Bicio* v. *Brewer*, supra, 92 Conn. App. 172.